403 So.2d 1249 (1981)
STATE of Louisiana, Plaintiff-Appellee,
v.
Alex WATSON, Defendant-Appellant.
No. 14603.
Court of Appeal of Louisiana, Second Circuit.
August 25, 1981.
*1250 Watson & Watson by Philip B. Watson, Jr., St. Joseph, for defendant-appellant.
George E. Wall, Jr., Sp.Asst.Dist.Atty., Tallulah, for plaintiff-appellee.
Before PRICE, JASPER E. JONES and FRED W. JONES, Jr., JJ.
PRICE, Judge.
In this suit the state seeks to have the defendant, Alex Watson, declared the father of Johnny and Kimberly Robinson, so as to establish his responsibility for child support. As a condition for receiving Aid to Families with Dependent Children (AFDC) payments, the mother, Katie Robinson, assigned to the Department of Health and Human Resources her rights to establish paternity and obtain child support. From a judgment declaring him to be the natural father of the children and ordering him to pay support "arrearages" defendant appeals. We affirm the judgment insofar as it declares Alex Watson the natural father, but reverse and modify the judgment insofar as it orders defendant to reimburse the state for payments made to the mother for support of the children before this suit was filed.
The mother testified that Johnny Robinson (born 1/20/74) and Kimberly Robinson (born 8/14/78) were both the children of defendant. She testified that she began dating defendant around January 1973 and had sexual relations with him on the first date. She continued this relationship until the birth of Johnny. After Johnny was born in January 1974, defendant continued to visit the mother about twice a month and these meetings continued until Kimberly was born in August 1978. The mother testified that she had no sexual relations with or even dated anyone other than defendant subsequent to her initial date with him in January 1973. She has lived in her mother's house with her mother and aunt the entire time of her relationship with defendant and has never lived with him. Defendant has provided no support for the two children other than to bring two bottles of milk to the mother shortly after the birth of Johnny in 1974.
*1251 The state filed this suit on October 12, 1978, for the purpose of asserting the rights assigned by the mother to establish paternity and obtain child support.[1] At the close of the state's evidence at the trial on the merits, the trial court dismissed defendant's motion for directed verdict and ordered the parties to submit to blood tests. These tests were inconclusive in that defendant could not be eliminated as the father.
The trial court rendered judgment declaring defendant to be the father of Johnny and Kimberly Watson and ordering him to pay to the state the sum of $2,756 representing AFDC payments made to the mother between December 1975 and July 1980. On appeal defendant contends that the trial court erred in finding him to be the father. Defendant also contends that even if the judgment establishing paternity should stand, the award for "arrearages" must be reversed since child support is only due for periods subsequent to judicial demand and judgment fixing the amount.
The two issues on appeal are the following:
(1) Was the trial court clearly wrong in its finding that Alex Watson is the biological father of Johnny and Kimberly Robinson?
(2) Did the trial court err in ordering defendant to reimburse the state for AFDC payments expended before the date of judicial demand?
PATERNITY
The pertinent Civil Code Articles for establishment of illegitimate filiation are the following:[2]
Illegitimate children, who have not been legally acknowledged, may be allowed to prove their paternal descent. C.C. Art. 208.
In the case where the proof of paternal descent is authorized by the preceding article, the proof may be made in either of the following ways:
1. By all kinds of private writings, in which the father may have acknowledged the bastard as his child, or may have called him so;
2. When the father, either in public or in private, has acknowledged him as his child, or has called him so in conversation, or has caused him to be educated as such;
3. When the mother of the child was known as living in a state of concubinage with the father, and resided as such in his house at the time when the child was conceived. Art. 209.
The oath of the mother, supported by proof of the cohabitation of the reputed father with her, out of his house, is not sufficient to establish natural paternal descent, if the mother be known as a woman of dissolute manners, or as having had an unlawful connection with one or more men (other than the man whom she declares to be the father of the child) *1252 either before or since the birth of the child. Art. 210.
At the outset we note that the record does not reveal sufficient evidence to establish acknowledgement under C.C. Art. 209. With the possible exception of bringing milk on one occasion to the baby boy born in 1974, defendant has not demonstrated in any way an intent to treat either of these children as his own.
Testimony of the mother reveals that she gave birth to a child out of wedlock in 1972, naming one Bert Thomas as the father. She stated that she had never had sexual relations with anyone prior to Thomas and defendant is the only other person she has ever dated.
Defendant contends that the mother is barred from establishing paternity by the terms of Art. 210 since she has admittedly had "an unlawful connection with one or more men (other than the man whom she declares to be the father of the child) either before or since the birth of the child." Although Art. 210 may arguably be subject to such a strict interpretation, this court has previously chosen not to apply it in such a manner.
In Wilson v. Ernst, 367 So.2d 891 (La. App.2d Cir. 1979), writ denied 369 So.2d 1365 (La.1979), we refused to hold that an admitted prior sexual relationship by the mother would disqualify her from proving paternity under Art. 210. In Wilson, the mother admitted having sexual relations with a man whom she stopped dating in January 1975. The child, whose paternity was at issue, was born in February 1977. Thus, in Wilson, evidence of sexual relations which ended two years prior to the birth of the child in question was insufficient to establish that the mother was a woman of "dissolute manners" at the time of conception.
In McConkey v. Pinto, 305 So.2d 469 (La. 1975), although finding evidence of acknowledgement under Art. 209, the Supreme Court discussed the disqualification of Art. 210 as follows:
The purpose of this disqualifying provision is to prevent a dissolute mother from choosing as the father of her illegitimate child any one of several men with whom she had been intimate at the time of conception.
Using a similar rationale, the Third Circuit has also refused to disqualify a woman from utilizing the article solely because she had been "guilty" of one prior "illicit connection." See Bertrand v. Warren, 326 So.2d 505 (La.App.3d Cir. 1976).
We do not mean to imply that evidence of other sexual relations is significant only when in the time frame of possible conception when construing the disqualification provisions of Art. 210. For example, evidence of numerous indiscriminate sexual relationships even remote in time from the birth of the child in question could very well be relevant to support the premise that the mother was a woman of dissolute character at the time of conception. At the other extreme, evidence of only one prior act of sexual misconduct occurring many years prior to conception of the child whose paternity is at issue would have little relevance to the same premise. It is the weight to be given the mother's testimony that is affected by evidence of other sexual relations, not the burden of proof. Succession of Washington, 308 So.2d 892 (La.App.2d Cir. 1974).
The evidence in this record fails to establish the mother as such a woman of dissolute manners. She testified that she had only dated two men in her life and had started dating defendant exclusively more than a year prior to the birth of the oldest child whose paternity is at issue in this case. She testified that she had sexual relations with no one other than defendant subsequent to the birth of her oldest child, who is about two years older than Johnny Robinson, the oldest of the children at issue in this case. Her testimony was substantially corroborated by her mother, aunt, and brother. Defendant did not testify to deny or contradict the mother's testimony. We therefore conclude that the evidence substantially supports the trial court's finding that defendant is the biological father of Johnny and Kimberly Robinson.
*1253 SUPPORT PAYMENTS
When the parties to this litigation arrived in court on January 27, 1981, for signing of the judgment, the state announced that it was "only asking for arrearages" since the mother had previously been removed from the AFDC rolls in July 1980. Over the objection of defendant that the petition did not seek arrearages and that he was unprepared to argue the point, the trial court reopened the case to allow testimony which established that the state had paid a total of $2,756 to the mother in AFDC payments from December 1975 to July 1980. This is the amount defendant was ordered to pay.
Defendant contends that a judge has no authority to allow alimony prior to judicial demand. He contends that when the law mentions arrearages, it undoubtedly has reference to an amount becoming due after the alimony has been fixed by the court. This argument has merit.
In Coney v. Coney, 215 La. 667, 41 So.2d 497 (1949), the Supreme Court held that alimony pendente lite was only due and payable from the date of judicial demand. In Cumpton v. Cumpton, 283 So.2d 846 (La. App.2d Cir. 1973), this court interpreted Coney to say that the trial court cannot make alimony retroactive to a date prior to judicial demand. In Re Greene, 300 So.2d 516 (La.App.2d Cir. 1974), writ denied 302 So.2d 621 (La.1974), held that the rules established by Cumpton and Coney apply to the commencement of support payments in paternity/support of illegitimate children cases.
We consider it almost self-evident that defendant should not be held responsible for AFDC payments made before he was ever adjudicated the father of the children and before any court order had been rendered establishing the amount of his support obligations. The provisions of the statute which provide for the assignment by the mother of her rights to claim support by virtue of her accepting AFDC payments clearly seems to contemplate that the assignment shall be applicable only to earlier court ordered child support payments. La. R.S. 46:236.1(F) in pertinent part:
The amount of such child support shall be set only by order of a court of competent jurisdiction or by consent of the party.
We conclude, therefore, that the judgment appealed must be reversed insofar as it orders defendant to reimburse the state for AFDC payments made before this suit was filed.[3]
For the reasons assigned, the judgment appealed is amended to reduce the sum payable by defendant to One Thousand Seventeen and 50/100 ($1,017.50) Dollars, which represents AFDC payments apportioned to Johnny and Kimberly Robinson subsequent to October 1978. The judgment is otherwise affirmed. Costs of this appeal are assessed to appellant.
NOTES
[1] La.R.S. 46:236.1 now provides in pertinent part:

§ 236.1 Family and Child Support Programs
* * * * * *
E. By accepting aid to families with dependent children assistance for or on behalf of a child or children, the applicant or recipient shall be deemed to have made an assignment to the department of any right, title, and interest to any support obligation or arrearages owed to or for such child or children or caretaker up to the amount of public assistance money paid to or on behalf of such child or children or caretaker for such term of time as such public assistance moneys are paid; provided, however, that the department may thereafter continue to collect any outstanding debt created by such assignment which has not been paid by the responsible person. The applicant or recipient shall also be deemed, without the necessity of signing any document, to have appointed the SES Program Administrator as his or her true and lawful attorney-in-fact to act in his or her name, place, and stead to perform the specific act of endorsing any and all drafts, checks, money orders or other negotiable instruments representing support payments which are received on behalf of such child or children or caretaker as reimbursement for the public assistance moneys paid to such applicant or recipient.
* * * * * *
[2] Articles 208 and 209 were amended, and Article 210 was repealed by Acts 1980, No. 549. Nevertheless, these paternity articles being substantive legislation are not retroactively applicable to the instant case.
[3] We find it significant in this case that there is no mention of arrearages in the petition filed by the state. The prayer of relief is as follows:

WHEREFORE, petitioners pray that there be judgment herein declaring Alex Watson be recognized as the biological father and awarding to the State of Louisiana child support in the amount to be set by this Honorable Court payable through the Louisiana Department of Health and Human Resources (DHHR), Office of Family Services, and awarding all costs of this proceeding.