420 So.2d 990 (1982)
Mary LA PIERRE
v.
Joseph Gerard GIBSON.
No. 13071.
Court of Appeal of Louisiana, Fourth Circuit.
September 30, 1982.
Writ Denied November 29, 1982.
*991 Charles J. Pisano, Pisano & Pisano, New Orleans, for plaintiff-appellee.
James E. Stovall, Jackson & Stovall, New Orleans, for defendant-appellant.
Before GULOTTA, AUGUSTINE and KLEES, JJ.
KLEES, Judge.
On December 26, 1979, Plaintiff filed a paternity suit seeking to have Defendant declared the father of her seven-year-old child. She also sought child support for the minor child.
This matter went to trial on the merits and judgment was rendered determining that Defendant was the father of the minor child, and he was ordered to pay child support in the amount of $200.00 per month. Defendant now appeals from that judgment contending that 1) the trial court's findings of fact were manifestly erroneous; 2) the trial court erred in admitting blood tests into evidence without cross examination; 3) the trial court erred in its conduct of the trial; 4) the trial court erred in failing to apply the prohibition of R.C.C. Art. 210.
Did the trial court commit manifest error in making its findings of fact?
The pertinent Civil Code Articles for the establishment of illegitimate filiation in this particular case are the following:
"Illegitimate children, who have not been legally acknowledged, may be allowed to prove their paternal descent. C.C. Art. 208.
In the case where the proof of paternal descent is authorized by the preceeding article, the proof may be made in either of the following ways:
1. By all kinds of private writings, in which the father may have acknowledged the bastard as his child, or may have called him so;
2. When the father, either in public or in private, has acknowledged him as his child, or has called him so in conversation, or has caused him to be educated as such;
3. When the mother of the child was known as living in a state of concubinage with the father, and resided as such in his house at the time when the child was conceived. Art. 209.
The oath of the mother, supported by proof of the cohabitation of the reputed father with her, out of his house, is not sufficient to establish natural paternal descent, if the mother be known as a woman of dissolute manners, or as having had an unlawful connection with one or more men (other than the man whom she declares to be the father of the child) either before of since the birth of the child. Art. 210
Articles 208 and 209 were amended, and Article 210 was repealed in 1980. Nevertheless, these articles as amended are not retroactively applied to the instant case. State v. Watson, 403 So.2d 1249 (La.App. 2nd Cir.1981).
The burden of proof required of the plaintiff under these articles is to establish paternity by a preponderance of the evidence. Succession of Washington, 308 So.2d 892 (La.1975). Plaintiff's petition states that paternity will be shown by sworn verbal testimony, in accordance with Articles 208 and 210 of the Civil Code. That is, plaintiff alleged she would prove paternity, by her oath, supported by proof of the cohabitation of the reputed father with her, out of his house. For the purposes of statutes relating to the legitimacy of children, the term "cohabitation" refers to acts of sexual intercourse. Ford v. Ford, 292 So.2d 275 (La.App. 2nd Cir.1974).

FACTS
Plaintiff testified that defendant was one of her high school teachers and they became acquainted during her junior year. Later in her senior year she began having sexual relations with him. She stated that their sexual relationship continued on a regular basis for eleven years. The child was born during that interval, in 1972. *992 Plaintiff and three witnesses testified that she did not date anyone else other than defendant during the time of her relationship with him.
There is testimony that the defendant, who was married and the father of two children by that marriage, visited the plaintiff, often during her pregnancy. The defendant himself testified that he visited the plaintiff in the hospital after the birth of the child, and that he later attended the baptism of the child. He also went to the party after the baby's baptism and visited the child frequently after he was born. The plaintiff testified that the defendant paid for medical treatments for the child, and that he once gave money to the plaintiff to send the child to a day camp. The record further reveals that the defendant accompanied the plaintiff and the child on a trip to Disneyworld. Photographs were admitted into evidence showing the defendant setting up drums for the child on Christmas Day 1974. Plaintiff testified that the defendant bought the child his outfit for kindergarten graduation. Witnesses testified that the defendant often picked up the child from the babysitter. The child called the defendant "daddy" and there is no evidence to indicate that defendant ever objected to this.
Considering the totality of the above facts, the trial court could reasonably have determined paternity based on the above evidence. It has been held that conclusive weight cannot be given to oath-plus-cohabitation if that evidence stands alone. Succession of Washington, supra.
Here, the oath-plus-cohabitation does not stand alone. The record reveals sufficient evidence to establish acknowledgement under subdivision (2) of R.C.C. Article 209. Here defendants continuous, habitual and frequent acts left little doubt that the defendant believed himself to be the father of the child. The court concludes that the trial court did not commit manifest error by determining Defendant to be the father of the minor child.
Did the trial court commit error in its handling of the blood test as evidence? LSA-R.S. 9:396 gives a trial court the authority to order, on its own motion, blood tests of the parties involved in a paternity suit. LSA-R.S. 9:397 states the procedure to be used in selecting the expert to perform the blood tests. Its language in pertinent part follows:
The tests shall be made by experts qualified as examiners of blood types who shall be appointed by this court. The experts shall (emphasis added) be called by the court as witnesses to testify to their findings and shall (emphasis added) be subject to cross-examination by the parties.
The above procedure was not followed by the trial court. The findings of the expert were simply made a part of the record and defendant appellant was never given his right of cross-examination.
A careful reading of the Uniform Act on Blood Tests to Determine Paternity leads us to conclude that the legislature intended, due to the nature of the subject matter, to provide a carefully regulated evidentiary procedure. McGowan v. Poche, 393 So.2d 278 (La.App. 1st Cir. 1980). The court in McGowan stated that the thrust of the statute is to make available scientific evidence adduced through medical experts appointed by the court and called to testify by the court. Appropriately the right to cross-examine the experts is mandatorily reserved for both sides of the controversy. The language of the statute is explicit. It was not adhered to in this case.
However, the question remains open whether the failure to allow the statute was an error which prejudiced the appellant. Counsel for appellee argues that there was sufficient evidence of paternity not withstanding any consideration of the blood test results. This assertion has merit, and considering the totality of the facts, as brought out above, we find that the trial court's conclusions are not manifestly erroneous, discounting completely the evidence of the blood tests.
Did the trial court commit error in its method of conducting the trial?
*993 Appellee argues that the trial court completely dominated the examination of the witnesses and the trial itself.
Generally, a trial judge, in order to maintain the impartiality which proper trial technique demands, should be careful not only as to the number and type of questions propounded by him to witnesses but also as to the manner in which they are propounded. Texas Pacific-Missouri Pacific Terminal R. of New Orleans v. Welsh, 179 F.2d 880 (5th Cir.1950). The court in Texas Pacific further explained that the extent to which the trial judge may appropriately and reasonably interrogate witnesses is largely in the sound and unabused discretion of the trial judge.
In this particular case, our careful reading of the trial record does not indicate any abuse of discretion by the trial judge. The questions asked by the court were in an effort to aid the conduct of the trial.
Defendant relies solely on the case of Labadot v. Labadot, 328 So.2d 747 (La.App. 4th Cir.1976). This case is clearly distinguishable from the one at bar. In Labadot, the trial court committed manifest error by refusing to allow the plaintiff, who represented herself, to cross-examine an adverse witness. The court completely took over the cross examination. Therefore, the litigant was deprived of the procedural right of cross-examination. In this case, defendant was afforded his procedural rights to cross examine the witnesses.
In sum, the trial record reveals that the judge, in the interest of judicial economy and other well intentioned motives, asked numerous questions of various witnesses but did not abuse the broad discretion accorded him under La. C.C.P. Art. 1631.
Did the trial court error by failing to apply the prohibitions of C.C. Article 210?
Finally, the defendant argues that the plaintiff had sexual relations with other men near the time of the birth of the child, and therefore she should be prohibited from proving paternity under Article 210.
Two witnesses, Earl Johnson and Edwin Williams, testified that they had a sexual relationship with the plaintiff near the time of the birth of the child. The record reflects that the testimony of these witnesses lacks credibility. The trial judge obviously gave little weight to such testimony, and as he is the trier of fact we will not disturb his finding.
For these reasons, the judgment of the trial court is affirmed. Defendant-Appellant to pay all costs.
AFFIRMED.