427 So.2d 71 (1983)
STATE of Louisiana Through the HEALTH AND HUMAN RESOURCES ADMINISTRATION
v.
Charles ESSEX.
No. CA-0257.
Court of Appeal of Louisiana, Fourth Circuit.
February 3, 1983.
Writ Denied March 25, 1983.
*72 Joseph W. Browning, Rodney J. Armstrong, Dept. of Health and Human Resources, New Orleans, for plaintiff-appellant.
Allan A. Parr, Mark S. McTernan, J. Paul Rumage, McTernan, Parr & Rumage, New Orleans, for defendant-appellee.
Before BARRY, KLEES and CIACCIO, JJ.
BARRY, Judge.
The State of Louisiana instituted this action against Charles Essex, pursuant to LSA-R.S. 46:236.1 F,[1] to establish his paternity of Ryan and Garren Jones, recipients of Aid to Families with Dependent Children, and to obtain a judgment of child support. The lower court found defendant to be the children's father and ordered him to pay $200 per month support in globo. On appeal defendant challenges the sufficiency of the evidence to establish his paternity and contends no evidence was adduced concerning the children's needs or defendant's means. Defendant also argues the in globo award was improper because support should be for a specific amount for each child.

FILIATION
Defendant's contention on the sufficiency of the evidence requires an initial determination of the applicable standard of proof. Both children were conceived prior to the 1980[2] and 1981[3] codal amendments concerning *73 proof of filiation. The State's petition was filed after the 1980 amendments but before the 1981 amendments and trial took place after the 1981 amendments became effective. There is a conflict in the case law as to whether these provisions are procedural and remedial requiring retroactive application, or substantive having only prospective effect.
In State v. Watson, 403 So.2d 1249 (La. App. 2d Cir.1981), the court held "[T]hese paternity articles being substantive legislation are not retroactively applicable to the instant case." However, in State v. Wiggins, 409 So.2d 1264, 1265 (La.App. 2d Cir. 1982), another panel of the Second Circuit stated in dictum:
Although one decision of this court has characterized the 1980 legislation as substantive and as having no retroactive effect, [citing Watson] it would seem that those provisions of the 1980 legislation relating to evidentiary matters are remedial or procedural in nature and should be applied even where the operative facts occurred and suit was filed prior to the effective date of the legislation. See Page v. American Motorist Ins. Co., Ltd., 381 So.2d 889 (La.App. 2d Cir.1980).
Wiggins, supra, was followed in IMC Exploration Co. v. Henderson, 419 So.2d 490 (La.App. 2d Cir.1982) in which the court adverted to the amendments but applied the former articles because they were still "in effect at the time of the trial of the instant lawsuit." Similarly, in La Pierre v. Gibson, 420 So.2d 990 (La.App. 4th Cir. 1982), this Court refused to apply the amended articles retroactively where the *74 trial had taken place before the effective date of the new articles.
The purpose of the Legislature in enacting the 1981 amendments was:
... to provide a procedure and time limitations for proceedings to establish filiation; to provide for the method and standard of proof in such actions; to provide that failure to institute timely such a proceeding shall bar the claims of such persons to establish filiation to their alleged parents; to authorize the Department of Health and Human Resources to institute proceedings to establish filiation under the Child Support Enforcement Program; and to provide otherwise with respect thereto. 720 La.Acts 1981.
The preface to the 1980 amendments is almost identical. While these provisions may affect an individual's ability to enforce his substantive rights, it is clear to us that the articles relate to evidentiary matters that are procedural in nature and should therefore have retroactive effect.
LSA-C.C. Art. 209, as amended in 1981, and effective prior to trial of this case, provides that "A child not entitled to legitimate filiation nor filiated by the initiative of the parent by legitimation or by acknowledgment under Article 203 must prove filiation by a preponderance of the evidence in a civil proceeding instituted by the child or on his behalf within the time limit provided in this Article." The State's burden of proof here, therefore, is by a preponderance of the evidence.
The evidence consists entirely of oral testimony. The alleged father was not asked to submit to a blood test and the State produced no documentary evidence of the children's relationship to defendant. Connie Jones, the children's mother, testified she began dating defendant in October of 1972 and had a continuous relationship with him through 1980, which included sexual relations from one to four times a week. She became pregnant in November of 1972 and Ryan Jones was born July 16, 1973. Ms. Jones testified she and defendant resumed sexual relations shortly after Ryan's birth and maintained their three or four times a week relationship until mid-1980 when she became pregnant again and Garren Jones was born on February 28, 1981. Although Ms. Jones and defendant never lived together, they frequently spent the night at one or the other's residence. Ms. Jones stated, and defendant admitted, he kept clothes at her apartment, frequently ate breakfast and lunch there, and had a key to her apartment from 1979 until sometime in 1980. Connie Jones' sister and a neighbor corroborated her testimony that defendant dated Jones since 1972 and spent three or four nights a week at her house in 1980.
Defendant denies he is the father of either child, and with the exception of small sums given to the mother at irregular intervals, he claims his actions do not demonstrate any attempt to acknowledge the children. Defendant does admit his regular sexual relationship with Connie Jones from 1972 through the beginning of 1980, but believes they stopped having relations before the younger child, Garren, was conceived in May of 1980. Defendant concedes he saw Connie Jones almost daily during 1980, but maintains he only visited her then so she could wash his clothes, plait his hair, and feed him. He contends he kept the key to her apartment so that he and his coworkers could use the bathroom when they worked near her apartment. Under cross examination, however, defendant admitted he had relations with Jones after February of 1980, and conceded she may have spent the night with him in May or June of 1980 when Garren was conceived. Defendant claimed his sexual relationship with Connie Jones ended in 1980, but then candidly admitted having sex with her three days before this trial in 1981, a rather bizarre event considering the pending trial.
Although defendant acknowledged that Ryan Jones (the older child) calls him "Dad," he claims there is no proof of his paternity because Connie Jones told him she was also dating another man at the time she met him. There was, however, no proof that any other man could have been Ryan's father. As to Garren's paternity, defendant *75 testified he saw Connie Jones in bed with another man "around the latter part of '79 or the first part of '80." A friend of defendant's testified he saw other men entering or leaving Connie Jones' apartment on two or three occasions. Ms. Jones admitted she slept with other men from 1972 through 1980, but denied having relations with any man other than the defendant in November of 1972 or in May of 1980 when the two children were conceived.
Defendant contends the decision in State v. Wiggins, supra, is controlling here, but we find this case factually distinguishable. The defendant in Wiggins introduced evidence that the mother had been dating another man at the time of conception which caused the break-up of the mother's short lived relationship with Mr. Wiggins.
The Trial Judge, who had the opportunity to observe the demeanor of Connie Jones and the defendant, as well as the other witnesses, found the state had proven defendant's paternity by a preponderance of the evidence. As defendant notes in his brief, "This standard requires that the evidence, when taken as a whole, must show that the fact or cause sought to be proven is more probable than not." In Succession of Matte, 346 So.2d 1345, 1350 (La.App. 3d Cir.1977), the court noted the broad discretion afforded the trial judge in paternity cases:
Obviously, the determination of whether or not there has been an informal acknowledgment or sufficient proof of descent from the alleged parent is a factual determination which must be made by reference to the record as a whole. Justice Dennis, then a judge in the Second Circuit Court of Appeal recognized this principle in Succession of Washington, supra, on rehearing. Thus, if there is a reasonable factual basis for the trial judge's conclusion regarding informal acknowledgment or proof of descent, his conclusion should not be disturbed on appeal. (our emphasis)
The totality of the evidence convinces us the lower court's finding was factually and legally proper.

SUPPORT
The trial court ordered defendant to pay the State $200 per month, in globo, for the support of the two minor children, under the assignment provision of LSA-R.S. 46:236.1 F. In fixing the amount of such an award the court must consider both the needs of the children and the father's ability to pay. State v. Guillory, 407 So.2d 1327 (La.App. 3d Cir.1981); McKonkey v. Pinto, 305 So.2d 469 (La.1975); State v. Watson, supra.
A thorough review of the record reveals there is no evidence indicating defendant's income, his employment, or his means to make support payments. Nor is there any evidence as to the needs of the children. Therefore, we must reluctantly remand to receive evidence on the children's needs and defendant's ability to pay to determine the amount of child support the State is entitled to recover on behalf of the two minor children.
ACCORDINGLY, the district court judgment is affirmed in its holding that the defendant, Charles Essex, is the natural father of Ryan and Garren Jones and is liable for their support. That portion of the judgment ordering defendant to pay $200 per month is annulled and set aside and the case is remanded for an evidentiary hearing to determine the amount of child support.
AFFIRMED IN PART; ANNULLED IN PART AND REMANDED.
KLEES, J., concurs.
KLEES, Judge, concurring.
While I do not agree that the 1980 and 1981 amendments to R.C.C. Arts. 209 and 210 are procedural in nature and should have retroactive effect, see La Pierre v. Gibson, 420 So.2d 990 (La.App. 4th Cir. 1982), there is sufficient proof in the record to sustain the judgment of the trial court under R.C.C. Arts. 209 and 210 prior to their amendment.
NOTES
[1] LSA-R.S. 46:236.1 F provides:

The department, except when it is not in the best interest of the child, may without the necessity of written assignment, subrogation, tutorship proceedings, separation proceedings, or divorce proceedings, take direct civil action, including actions to establish filiation against an alleged biological parent notwithstanding the existence of a legal presumption that another person is the parent of the child solely for the purpose of fulfilling its responsibility under this Section, in any court of competent jurisdiction, to obtain an order, judgment, or agreement of support against the responsible person in any case in which an AFDC grant has been made for or on behalf of a child or children or in any case in which the department has agreed to provide services for a non-AFDC applicant. The amount of such support shall be set only by order of the court or by the consent of the parties, but in either case the department shall be designated as payee. A separate and distinct cause of action in favor of the department is hereby created, and suits brought under this provision need not be ancillary to or dependent upon any other legal proceeding.
[2] Prior to the effective date of the 1980 amendments on July 23, 1980, LSA-C.C. Arts. 209 and 210 provided for proof of paternity as follows:

Art. 209. In the case where the proof of paternal descent is authorized by the preceding article, the proof may be made in either of the following ways:
1. By all kinds of private writings, in which the father may have acknowledged the bastard as his child, or may have called him so;
2. When the father, either in public or in private, has acknowledged him as his child, or has called him so in conversation, or has caused him to be educated as such;
3. When the mother of the child was known as living in a state of concubinage with the father, and resided as such in his house at the time when the child was conceived.
Art. 210. The oath of the mother, supported by proof of the cohabitation of the reputed father with her, out of his house, is not sufficient to establish natural paternal descent, if the mother be known as a woman of dissolute manners, or as having had an unlawful connection with one or more men (other than the man whom she declares to be the father of the child) either before or since the birth of the child. La. Act 549 of 1980 repealed LSA-C.C. Art. 210 and amended LSA-C.C. Art. 209 to provide, in pertinent part:
1. An illegitimate child may be entitled to a rebuttable presumption of filiation under the provisions of this Article. Or any child may establish filiation, regardless of the circumstances of conception, by a civil proceeding instituted by the child or on his behalf in the parish of his birth, or other proper venue as provided by law, within the time limitation prescribed in this Article.
* * * * * *
4. A child of a man may prove filiation by any means which establish, by a preponderance of the evidence, including acknowledgment in a testament, that he is the child of that man. Evidence that the mother and alleged father were known as living in a state of concubinage and resided as such at the time when the child was conceived creates a rebuttable presumption of filiation between the child and the alleged father.
5. Proof of filiation must be made by evidence of events, conduct, or other information which occurred during the lifetime of the alleged parent. A civil proceeding to establish filiation must be brought within six months after the death of the alleged parent, or within nineteen years of the illegitimate child's birth, whichever occurs first.
* * * * * *
If no proceeding is timely instituted, the claim of an illegitimate child or on its behalf to rights in the succession of the alleged parent shall be forever barred. The time limitation provided in this Article shall run against all persons, including minors and interdicts.
* * * * * *
[3] LSA-C.C. Art. 209 was again amended and reenacted by La. Act 720 of 1981 to provide:

A. A child not entitled to legitimate filiation nor filiated by the initiative of the parent by legitimation or by acknowledgment under Article 203 must prove filiation by a preponderance of the evidence in a civil proceeding instituted by the child or on his behalf within the time limit provided in this Article.
B. The proceeding required by this Article must be brought within one year of the death of the alleged parent or within nineteen years of the child's birth, whichever first occurs. This time limitation shall run against all persons, including minors and interdicts. If the proceeding is not timely instituted, the child may not thereafter establish his filiation.