515 So.2d 566 (1987)
STATE of Louisiana, Through the DEPARTMENT OF HEALTH AND HUMAN RESOURCES, OFFICE OF FAMILY SECURITY, In the Interest of Courtney Delaine ROBINS
v.
Franklin Winston HINTON.
No. 86 CA 1087.
Court of Appeal of Louisiana, First Circuit.
October 14, 1987.
Michael D. Brown, Sherrill Davidson, Staff Atty., Baton Rouge, for plaintiff-appellee State of La., through the Dept. of Health and Human Resources, Office of Family Sec., in the interest of Courtney Delaine Robins.
Rollin W. Cole, Jr., Baton Rouge, for defendant-appellant Franklin Winston Hinton.
Before WATKINS, CARTER and CHIASSON[*], JJ.
WATKINS, Judge.
Defendant, Franklin Winston Hinton, appeals the trial court's decision declaring him to be the biological father of a minor child. On appeal, he asserts two assignments of error. For reasons expressed, we affirm.

*567 FACTS
On November 18, 1982, the State of Louisiana, through the Department of Health and Human Resources (DHHR), filed a suit to establish the paternity of Courtney D. Robins, born to Connie Robins Bradford on April 2, 1975. The facts show that Courtney is the legitimate child of Johnny Berry to whom her mother was married at the time Courtney was conceived. The mother, Connie, and Mr. Berry were married on May 16, 1971. They obtained a judgment of separation in November of 1972, and did not live together thereafter.
During Connie's marriage to Mr. Berry she allegedly had sexual relations with the defendant Franklin Winston Hinton who was himself married to Ethel Hill Hinton. Mr. Berry obtained a divorce on February 6, 1975. Fifty-five days later Courtney was born. The husband, Mr. Berry, did not take any action to disavow paternity.
At trial, the mother testified that she met the defendant at her parents' home, where she resided. Connie recalled that she and the defendant started dating "around the latter part of September 1972." She admitted to having sexual relations with the defendant. Furthermore, she testified that she and the defendant attended a wedding together on July 2, 1974, and thereafter had sexual relations resulting in the conception of Courtney. This testimony was corroborated by Connie's mother, who also attended the wedding. Connie testified that the defendant was the only man that she had dated or had sexual relations with during a six month period beginning three months prior to the month of conception and ending three months after conception. After the child was born she and the defendant had a sporatic relationship, including sexual relations, ending in March of 1984.
Connie testified that up until March of 1984 the defendant made informal acknowledgments of the child, and maintained a continuing interest in the child by providing clothing, toys and on one occasion food. Connie also testified that the defendant drove Courtney to school when she missed the bus.
Lizzie Robins, Connie's mother, also testified that the defendant gave Courtney occasional gifts. On one occasion she recalled the card on the gift stating it was from "Daddy". Lizzie Robins further testified that she knew that her daughter was dating the defendant because she would see his car pick Connie up on the street corner.
Around 1976, Connie Robins moved to her aunt Mattie's house following an argument with her father. Both Connie and her aunt recall the defendant coming to visit and that he purchased groceries for Connie and her children. Connie's aunt also recalled that it was the defendant who brought Connie back to her parents' home three days later.
The state also offered the testimony of Barbara Godfrey, a friend of Connie's whom she worked with at the Picadilly Cafeteria. Ms. Godfrey testified that Connie and the defendant dated and that she and her boyfriend would double date with them. Ms. Godfrey also identified a photograph which was taken at the Cabana Club in which the defendant had his arm around Connie. Ms. Godfrey also remembered the defendant picking Connie up after work at 9:00 p.m. on the nights she and Connie worked together. On cross examination, Ms. Godfrey testified that she and her boyfriend double dated with Connie and the defendant every Saturday night for a period of time in the Fall of 1974.
The expert testimony of clinical immunologist, Dr. James Geyer concluded that the defendant could not be excluded as the father of Courtney and that the relative probability that the defendant is the true biological father of Courtney is ninety-nine point four percent (99.4%).
Courtney Robins, then 10 years old, testified that she calls Frank Hinton "Daddy", that he told her he was her father; that he brought her gifts and money; and that he drove her to school on many occasions.
The defense presented the testimony of the defendant, Frank Hinton, his mother and two co-workers.
*568 The primary defense of Mr. Hinton was based on the presupposition that, because of his shift work at Crown Zellerbach, it was impossible for him to meet Connie and Courtney at the times and places suggested by the two women.
The defendant offered the testimony of two co-workers neither of whom could positively state that the defendant was on shift work in the Fall of 1974.
One co-worker, Mr. Clarence Pitts, did testify that he and Frank were good "drinking buddies" and that he never saw Frank out with Connie or ever heard him speak of her or Courtney.
The defendant flatly denied ever having sexual relations with Connie. He admitted going out with her only twice, as a favor to Connie's brother. Further, the defendant maintains that he was working shift work in 1974 and could not have dated Connie as she testified.
The defendant's first assignment of error maintains that the trial court erred in allowing the DHHR to bring an action to prove filiation on behalf of a minor child who already enjoys legitimate status under Louisiana law.
Under the legislative dictate of LSA-R.S. 46:236.1(F)[1] the DHHR has authority to initiate a civil paternity proceeding... "to establish filiation against an alleged biological parent notwithstanding the existence of a legal presumption that another person is the parent of the child solely for the purpose of fulfilling its responsibility under this Section, ...."
Furthermore, the Supreme Court in Griffin v. Succession of Branch, 479 So.2d 324 (La.1985), has recently interpreted LSA-C. C. art. 209[2] as allowing presumed legitimate children to maintain a filiation action against their alleged biological father as long as he is not the presumed father as well. It is interesting to note that the court adopted the interpretation expressed by the First Circuit in Succession of Levy, 428 So.2d 904 (La.App. 1st Cir.1983). The Supreme Court concluded that "children who fall into one of the enumerated classes contained in Article 209 are not precluded from instituting a filiation action under that article, they are merely relieved of the *569 obligation to do so by operation of law." Griffin, supra at 327.
The court's interpretation is in line with the previous jurisprudence allowing filiation actions even though the child was presumed legitimate under Louisiana law. Malek v. Yekani-Fard, 422 So.2d 1151 (La. 1982); State Through Dept. of Health & Human Resources v. Guillory, 407 So.2d 1327 (La.App. 3rd Cir.1981); State in Interest of Poche v. Poche, 368 So.2d 175 (La.App. 4th Cir.1979), writ denied 370 So. 2d 577 (La.1979); Warren v. Richard, 296 So.2d 813 (La.1974); Succession of Levy, supra; Fontenot v. Thierry, 422 So.2d 586 (La.App. 3rd Cir.1982), writ denied, 427 So.2d 868 (1983).
We therefore find that the DHHR is not prohibited from initiating paternity proceedings, under LSA-R.S. 46:236.1(F), to establish the filiation of a minor child who is presumed legitimate under LSA-C.C. art. 184 and art. 185.[3]
In his second assignment of error defendant contends the trial judge erred in finding the evidence presented sufficient to establish his paternity. Under LSA-C.C. art. 209, proof of filiation to an alleged living parent must be made by a "preponderance of the evidence." This standard requires that the evidence, taken as a whole, must show that the fact or cause sought to be proven is more probable than not. State Through Dept. of Health & Human Resources v. Essex, 427 So.2d 71 (La.App. 4th Cir.1983), writ denied 430 So.2d 82 (La.1983).
In the Essex decision the court quoted from Succession of Matte, 346 So.2d 1345, 1350 (La.App. 3d Cir.1977) noting the broad discretion afforded the trial judge in paternity cases:
Obviously, the determination of whether or not there has been an informal acknowledgment or sufficient proof of descent from the alleged parent is a factual determination which must be made by reference to the record as a whole. Justice Dennis, then a judge in the Second Circuit Court of Appeal recognized this principle in Succession of Washington, supra, on rehearing. Thus, if there is a reasonable factual basis for the trial judge's conclusion regarding informal acknowledgment of proof of descent, his conclusion should not be disturbed on appeal. (our emphasis)
Essex, supra at 75.
The law is clear that we are not at liberty to disturb a trial court's factual determination unless it is manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978); Canter v. Koehring Company, 283 So.2d 716 (La.1973).
In State Through Dept. of Health & Human Resources v. Rice, 482 So.2d 873 (La.App. 2d Cir.1986), the testimony of the mother, supported by the strong scientific evidence, was sufficient to create a preponderance of evidence establishing the defendant was the biological father.
Furthermore, the following cases were discussed in Sharff v. Tanner, 486 So.2d 1047 (La.App. 2d Cir.1986) as supporting a finding of paternity by a preponderance of the evidence.
In State Through Dept. of Health v. Williams, 471 So.2d 1064 (La.App. 3d Cir.1985), a trial court's finding of paternity was held to satisfy proof by a preponderance, where the record established that it was likely that the child was conceived during the time the mother and father had sexual relations; and where the mother testified that she did not have sex with any other men during the time of conception.
In State v. Watson, 403 So.2d 1249 (La.App. 2d Cir.1981), sufficient proof of paternity was provided when the mother testified that she dated the alleged father *570 exclusively for more than one year immediately preceeding the birth of the child; that she had no other sexual relations during the time of conception, and her testimony was substantially corroborated by other witnesses.
Id. at 1049.
Considering the evidence as a whole, we are unable to conclude that the trial court committed manifest error in finding that the evidence established that Franklin Winston Hinton is the biological father of Courtney Delaine Robins.
For the above reasons, the judgment of the trial court is affirmed, all costs to be borne by defendant.
AFFIRMED.
CARTER, J., concurs in the result.
NOTES
[*] Judge Remy Chiasson, retired, has been assigned temporarily to this Court by the Supreme Court of Louisiana, to fill the vacancy created by the death of Judge John S. Covington.
[1] LSA-R.S. 46.236.1(F) reads as follows:

F. The department, except when it is not in the best interest of the child, may without the necessity of written assignment, subrogation, tutorship proceedings, separation proceedings, or divorce proceedings, take direct civil action, including actions to establish filiation against an alleged biological parent notwithstanding the existence of a legal presumption that another person is the parent of the child solely for the purpose of fulfilling its responsibility under this Section, in any court of competent jurisdiction, to obtain an order, judgment, or agreement of support against the responsible person in any case in which an AFDC grant has been made for or on behalf of a child or children or in any case in which the department has agreed to provide services for a non-AFDC applicant. The amount of such support shall be set only by order of the court or by the consent of the parties, but in either case the department shall be designated as payee. A separate and distinct cause of action in favor of the department is hereby created, and suits brought under this provision need not be ancillary to or dependent upon any other legal proceeding.
[2] LSA-C.C. art. 209 reads as follows:

A. A child not entitled to legitimate filiation nor filiated by the initiative of the parent by legitimation or by acknowledgment under Article 203 must prove filiation as to an alleged living parent by a preponderance of the evidence in a civil proceeding instituted by the child or on his behalf within the time limit provided in this Article.
B. A child not entitled to legitimate filiation nor filiated by the initiative of the parent by legitimation or by acknowledgment under Article 203 must prove filiation as to an alleged deceased parent by clear and convincing evidence in a civil proceeding instituted by the child or on his behalf within the time limit provided in this Article.
C. The proceeding required by this article must be brought within one year of the death of the alleged parent or within nineteen years of the child's birth, whichever first occurs. This time limitation shall run against all persons, including minors and interdicts. If the proceeding is not timely instituted, the child may not thereafter establish his filiation, except for the sole purpose of establishing the right to recover damages under Article 2315. A proceeding for that purpose may be brought within one year of the death of the alleged parent and may be cumulated with the action to recover damages.
D. The right to bring this proceeding is heritable.
[3] LSA-C.C. art. 184 reads as follows:

Art. 184. The husband of the mother is presumed to be the father of all children born or conceived during the marriage.
LSA-C.C. art. 185 reads as follows:
A child born less than three hundred days after the dissolution of the marriage is presumed to have been conceived during the marriage. A child born three hundred days or more after the dissolution of the marriage is not presumed to be the child of the husband.