575 So.2d 921 (1991)
Sherry Kay LAPRARIE, Plaintiff-Appellee,
v.
Gary Edwin KING, Defendant-Appellant.
No. 22178-CA.
Court of Appeal of Louisiana, Second Circuit.
February 27, 1991.
Writ Denied April 26, 1991.
*922 William H. Baker, Jonesboro, for defendant-appellant.
J. Michael Rhymes, Monroe, for plaintiff-appellee.
Before SEXTON, LINDSAY and VICTORY, JJ.
VICTORY, Judge.
In this paternity action, defendant Gary King appeals a default judgment declaring him to be the biological father of the minor child, T.J., and ordering him to pay $400 in monthly child support. He contends the trial court erred in denying his motion for new trial, and alternatively, there was insufficient evidence to support the paternity determination and the child support award.
For the reasons hereinafter assigned, we amend and affirm.

FACTS
On March 15, 1985, plaintiff filed her petition seeking to have defendant King declared the biological father of her minor child and an award for "reasonable" child support. After being personally served on March 26, defendant wrote plaintiff's attorney a letter dated April 1 denying he was the child's father. He did not, however, consult with or retain counsel or file an answer or other responsive pleading.
When defendant failed to answer, a preliminary default was entered on April 22. An evidentiary hearing, which defendant did not attend, was held on April 25. Based upon plaintiff's evidence, the trial court found defendant to be the child's biological father and ordered him to pay child support.
On April 29, plaintiff's counsel wrote defendant, advising him that a default judgment had been taken and seeking to begin collecting child support payments. Defendant then contacted Attorney Smith, who timely filed an application for new trial on May 3.
The record reflects defendant's application for new trial was initially set for hearing on May 31, 1985. Court minutes reveal, however, the hearing was continued without date by "consent of counsel."[1] Over four years later, on July 26, 1989, plaintiff's new counsel moved to reset defendant's new trial application for hearing.
No evidentiary hearing was ever held on defendant's new trial application. Instead, following an August 31, 1989 pretrial conference, *923 the parties agreed to submit the matter only on briefs.[2]
On January 23, 1990, the trial court rendered its opinion denying defendant's new trial application with detailed written reasons. However, no judgment was signed denying new trial motion until April 12, 1990. Defendant thereafter timely appealed.

PLAINTIFF'S EVIDENCE ON CONFIRMATION
Before putting on any evidence, plaintiff introduced in evidence the entire court record in this case, including her petition and the sheriff's return of service. Additionally, through her own testimony, plaintiff established her daughter's approximate date of conception to be in early February, 1984 and date of birth of September 6, 1984. Since T.J. was seven and one-half weeks premature, she was required to remain hospitalized for an unspecified period, during which extensive hospital and medical expenses were incurred.
Plaintiff also testified regarding her relationship with the defendant. She and the defendant had dated since her freshman year of high school and in January, 1984, they were engaged to be married. It was then, when she was eighteen, that their physical relationship began.
Plaintiff and defendant had sexual intercourse during January and February, 1984. She was not then dating, nor did she have intercourse with, anyone else. In her mind, there was no question that defendant was the child's father.
Plaintiff also discussed the defendant's relationship with and his statements concerning the child. Defendant purchased a baby bed, clothing, toys and an infant seat for the child. He also visited her at the hospital and then several times ("as often as he could [but] about once a week") at plaintiff's parents' home where she and the child were then living.
Plaintiff further testified that defendant often referred to T.J. as "his child" and seemed to care for her. She had never heard him indicate otherwise. Defendant had even requested they take pictures of the three of them. One of these photographs was introduced in evidence at the confirmation hearing.
Other witnesses corroborated plaintiff's testimony concerning defendant's statements. Plaintiff's father explained that during visits defendant "acted like a parent" by loving and kissing on the child as a father would, commenting defendant "couldn't keep his hands off her." He had heard defendant refer to the child as "Daddy's little girl."
Similarly, plaintiff's brother was present on several occasions when defendant visited. He had heard defendant at the hospital comment about how pretty T.J. was, referring to himself as "Dad." He also heard defendant on one occasion say he was "glad he made this kind of mistake." Other witnesses, not of plaintiff's immediate family, heard similar statements by defendant.

MOTION FOR NEW TRIAL
Defendant's new trial application is purportedly based upon both peremptory and discretionary grounds. C.C.P. Art. 1971, et seq. As peremptory grounds, defendant contends the default judgment is contrary to the law and evidence, presenting three supporting arguments which we now address.

Attorney's Alleged Agreement Not to Oppose
Defendant claims that when he first filed his new trial motion, but prior to their *924 withdrawal of record, the parties' former counsel had agreed plaintiff "would not oppose" defendant's motion. By setting the matter for hearing, he continues, plaintiff's new counsel reneged on the "agreement."
Addressing this argument, the trial court found no evidence indicating such an agreement had in fact been reached. It further concluded that even if such an "agreement" had been confected, it was not binding on plaintiff's new counsel, especially after a four year delay. We agree.
As noted, no evidentiary hearing was held on defendant's new trial motion. The letters filed with defendant's brief here and below and upon which defendant relies were never admitted into evidence. Further, no formal written or recorded stipulation was made between either the parties' former or present counsel. Thus, there is no competent evidence before us showing that such an agreement was reached.
In fact, the record reflects the contrary. Court minutes for May 31, 1985, the initial hearing date, show the parties' respective former counsel agreed only to delay the hearing and "continue [it] without date." Accordingly, this assignment is meritless.

Compliance with Local Rules
Defendant additionally argues the trial court erred in denying his motion for new trial since plaintiff violated local court rules requiring her to submit and serve upon him an affidavit of income and expenses. See Rules 7(B) and 10, Rules of the Third Judicial District Court. We disagree.
Rules of Court are binding upon and have the effect of law on judges and litigants. Brumfield v. Brumfield, 178 So.2d 379 (La.App. 1st Cir.), writ refused, 248 La. 435, 179 So.2d 274 (La.1965); Lewis v. Modular Quarters, 508 So.2d 975 (La.App. 3d Cir.), writ denied, 514 So.2d 127 (La.1987), U.S. cert. denied, 487 U.S. 1226, 108 S.Ct. 2886, 101 L.Ed.2d 920 (1988). They are, however, intended solely to aid in the orderly and efficient conduct of litigation and are not to be construed so literally as to defeat their intended purpose. Love v. Baden, 478 So.2d 1008, 1010 (La.App. 3d Cir. 1985) and the cases therein cited.
During the default confirmation hearing, the trial court asked if plaintiff had prepared and filed the required affidavit. When plaintiff replied negatively, the trial court noted plaintiff failed to comply with local rules concerning the income and expense affidavit and even stated that such is "always" expected and required. Nevertheless, the trial court allowed plaintiff to proceed with her case.
To prolong the default confirmation hearing until a plaintiff prepares and files his income and expense affidavit and defendant is served and notified to respond would defeat the intended purpose of cited local and applicable state procedural rules. Having already failed to comply with the citation, defendant suggests he would have responded had plaintiff complied. We find no basis for this speculative conclusion.
Further, we also consider Local Rule 30. This rule allows a trial court in its discretion to orally amend or suspend its rules at any time in a particular case or circumstance. In effect, the trial court in its discretion orally suspended the applicable rules. See Rule 30, Rules of the Third Judicial District Court.
Moreover, having been personally served, defendant was aware of everything plaintiff was claiming. Defendant has not cited us to any law, nor are we aware of any, which would deny the trial court discretion to waive the local rules in a particular case. Defendant does not allege, nor can we discern, any prejudice to the defendant by this waiver. Nor has he shown by competent evidence what other testimony or evidence he would have introduced in his defense had he been furnished with the affidavit.[3]
*925 Under these facts, we perceive no abuse of discretion in the trial court's decision to suspend, in the interest of judicial economy and expediency, the local rules requiring filing and service of the income and expense affidavit and in allowing plaintiff to proceed. Rosell v. Esco, 549 So.2d 840 (La.1989); See also Daiquiri Factory, Ltd. v. City of Lafayette, 429 So.2d 523 (La. App. 3rd Cir.), writs denied, 435 So.2d 441 (La.1983); Dunn v. Dunn, 546 So.2d 819 (La.App. 5th Cir.1989).

SUFFICIENCY OF THE EVIDENCE
Defendant further contends the judgment is contrary to law and evidence, claiming plaintiff failed to prove her claims by a preponderance of the evidence. Without pointing to any particular deficiencies in plaintiff's proof, he argues plaintiff failed to present a prima facie case establishing paternity and showing her entitlement to judgment by default for child support. We disagree.
A default judgment must be confirmed by proof sufficient to establish a prima facie case. LSA-C.C.P. Art. 1702. Thus, plaintiff must prove all the essential allegations of her petition as fully as if they had been specifically denied. Allen v. Brandt, 438 So.2d 712 (La.App. 2d Cir.1983); Dunn v. Dunn, supra; Holmes v. Rachal, 525 So.2d 59 (La.App. 3d Cir.1988); Perrodin v. Zander, 441 So.2d 12 (La.App. 3d Cir.1983), writ denied, 444 So.2d 120 (La.1984).
Under C.C. Art. 209, proof of filiation to a living parent must be made by a preponderance of the evidence. Thus, taken as a whole, the evidence must show that the fact or cause sought to be proven is more probable than not. C.C. Art. 209; Worley v. Thirdkill, 506 So.2d 1288 (La.App. 2d Cir.1987); Sharff v. Tanner, 486 So.2d 1047 (La.App. 2d Cir.1986); State through DHHR v. Smith, 459 So.2d 146 (La.App. 2d Cir.1984); State v. Sharplin, 431 So.2d 864 (La.App. 2d Cir.1983); State v. Essex, 427 So.2d 71 (La.App. 4th Cir.), writ denied, 430 So.2d 82 (La.1983). It is essential that the default judgment be supported by the law and evidence; if any portion of the default judgment evidence does not amount to and is not supported by the law and evidence, that portion must be stricken. See Perrodin v. Southern Siding Company, 524 So.2d 885, 890 (La.App. 3d Cir.1988).
The determination of whether there is sufficient proof is a question of fact and should not be disturbed on appeal unless it is manifestly erroneous. State in Interest of Braden v. Nash, 550 So.2d 866 (La.App. 2d Cir.1989); Williams v. Olden, 561 So.2d 871 (La.App. 2d Cir.1990).

The Paternity Judgment
Here, the evidence is sufficient to establish paternity. In reaching its paternity decision, the trial court considered and found credible evidence showing (1) the date the suit was filed; (2) the date defendant was personally served with the petition and citation; (3) the mother and alleged father had an extended relationship during which they had engaged in sexual intercourse; (4) the mother was not having sexual relations with other men and that no one else could be the father; (5) her belief that defendant was the father; (6) the approximate date of conception; (7) the child's date of birth seven weeks premature; (8) the child's age; (9) the conception date was within the accepted range of time the mother and the alleged father had sexual intercourse; and (10) the alleged father's informal acknowledgment of the child through financial aid and statements made, both verbal and through his conduct.
While any one of these factors, if established alone, would be insufficient to satisfy plaintiff's burden of proof, they are important factors which must be weighed with all other evidence presented during the default confirmation hearing. Although blood test results are often used, they are not the only means of proving paternity. Proof of filiation may include informal acknowledgment, acknowledgment *926 in a testament or proof that the alleged parents lived in a state of concubinage at the time of conception. C.C.Art. 209, Comment (b).
Evidence of informal acknowledgment of paternity must be unequivocal and of a sufficient frequency that there can be little doubt that the alleged father believes himself to be the child's father. State v. Sharplin, supra; IMC Exploration Co. v. Henderson, 419 So.2d 490 (La.App. 2d Cir.) writs denied, 423 So.2d 1149 and 423 So.2d 1150 (La.1982).
The evidence concerning defendant's informal acknowledgment of the child is sufficient to establish defendant is the child's biological father. Defendant made statements in the presence of others that T.J. was "his child;" his actions, such as his visits with and purchase of necessary items for the child, corroborate his statements. Compare State v. Wiggins, 409 So.2d 1264 (La.App. 2d Cir.1982); State v. Watson, 403 So.2d 1249 (La.App. 2d Cir.1981) (one "acknowledgment" under coercive circumstances is not alone sufficient). The totality of all the evidence convinces us the trial court did not err in finding defendant is the child's biological father. Sharff v. Tanner, supra; IMC Exploration Co. v. Henderson, supra; State through Dept. of Health v. Williams, 471 So.2d 1064 (La. App. 3d Cir.1985); State v. Watson, supra.

The Child Support Judgment
In fixing child support, the trial court must consider both the child's needs and the father's ability to pay. State v. Watson, supra. In its reasons for judgment, the trial court ordered defendant to pay $295 plus an additional $105 monthly to reimburse plaintiff's father for the child's extraordinary hospital and other medical expenses. We have reviewed the evidence and find it sufficient to justify the child support award.
The only testimony concerning the child's needs was that of plaintiff. She testified her monthly child care expenses totalled $295, specifically delineating her expenses for food, clothing, diapers, medical bills and other items.
Additionally, plaintiff and her father testified concerning the child's outstanding hospital and other extraordinary medical expenses necessitated by her seven and one-half weeks premature birth. Her father, who had been paying these bills, stated the out-of-pocket expenses, not covered by health insurance, totalled $3,100.
Plaintiff further testified that defendant had been working for $1,200 per month before his parents purchased him an "eighteen-wheeler." Although she knew defendant's income had increased as a truck driver, she was apparently unsure of his actual income. Her testimony regarding his income as a truck driver was obviously not considered by the trial court in making its determination since it was too speculative.
Determining defendant was responsible for and should pay for these necessary expenses, the trial court ordered defendant to pay $400 in monthly support. The evidence of defendant's income in his former employment, together with that regarding his employment as a truck driver and apparent means to make support payments, is sufficient to justify the $400 monthly child support award, particularly in light of the child's extraordinary medical expenses and absent evidence to the contrary.
We find, however, the trial court failed to place any limits on the time defendant would be required to make the additional $105 monthly payments. The express purpose of this additional award was to reimburse the out-of-pocket expenses necessitated by the child's extraordinary and necessary medical bills totalling $3,100.
Plaintiff testified and the trial court found the child's monthly needs totalled $295. With additional monthly payments as child support of $105, the extraordinary medical expenses would be repaid in full within about 30 months. In the interest of justice, we amend the judgment to reflect the trial court's obvious intentions.
Accordingly, defendant shall pay monthly child support of $400 for thirty months.[4] *927 Thereafter, his monthly child support obligation shall be $295 pending further orders of the trial court.

DISCRETIONARY GROUNDS
Claiming he established "good cause," defendant alternatively contends he is entitled to a new trial on discretionary grounds. Seeking his day in court and an opportunity to establish he is not the child's father, or alternatively, that he was not financially able to pay the awarded child support, defendant argues a new trial is warranted in the interest of justice.
C.C.P. Art. 1973 provides that a trial court may in its discretion grant a new trial if there is good cause therefor. Proper application of this article requires an examination of the facts and circumstances of each case. When the trial judge is convinced by his examination of the facts that the judgment would result in a miscarriage of justice, a new trial should be ordered. Lamb v. Lamb, 430 So.2d 51 (La.1983); Shows v. Williamson, 256 So.2d 688 (La. App. 2d Cir.), writ refused, 261 La. 231, 259 So.2d 76 (1972). A trial judge's determination should only be set aside in cases of manifest abuse of discretion. C.C.P. Art. 1971, comment (d); Lamb v. Lamb, supra; Hardy v. Kidder, 292 So.2d 575 (La. 1973).
Where a timely motion for new trial has been denied after the proper confirmation of a default judgment, an appellate court should be particularly cautious in examining the circumstances underlying the judgment due to the general policy consideration, weighing in the defendant's favor, that every litigant should be allowed his day in court.
One who seeks to overturn a default judgment against him must allege and prove good reasons sufficient to excuse his failure to appear and plead any defenses he might have had. Generally, post-confirmation allegations denying a plaintiff's petition are not sufficient for the granting of a new trial after a default judgment has been rendered. Appellate courts will not disturb that ruling even though the defendant may urge in his motion for a new trial that he has a meritorious defense. Kugle v. Hennessy, 480 So.2d 849 (La.App. 2d Cir.1985); compare e.g., Elliott v. Kennedy, 493 So.2d 265 (La.App.2d Cir.), opinion vacated, 497 So.2d 1008 (La.1986) (New trial ordered where suit was obviously contested in court for an extended period and attorney failed to answer).
Although defendant was personally served with the petition and citation, he admittedly failed to even contact, much less retain, counsel to represent or advise him. Nor did he answer or otherwise respond to the petition as the citation required. Defendant does not assert any absolute defenses to plaintiff's suit. In fact, defendant merely asserts procedural defects as peremptory grounds and invokes equity as discretionary grounds in the proceedings below in support of his new trial application. No new issues are raised.
Further, defendant does not assert or argue, nor do we find, any evidence that his failure to plead was the result of an attorney's negligence. To the contrary, the record reflects the failure to timely and properly answer or file responsive pleadings was defendant's fault.
It has long been the law of this state that the mere failure to file an answer, without more, is not sufficient grounds to grant a new trial. Compare Lamb v. Lamb, supra; see also DeFrances v. Gauthier, 220 La. 145, 55 So.2d 896 (1951); Raphiel v. Louisiana Ry. & Nav. Co., 155 La. 590, 99 So. 459 (1924). Under the circumstances presented here, we do not find this case involves a miscarriage of justice.

DISPOSITION
In summary, we find no abuse of the trial court's discretion in denying defendant's new trial application. The evidence was sufficient to establish that defendant is the child's biological father. Further, as amended, the award for child support is proper and justified. As amended, we affirm at defendant's costs.
*928 AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] Thereafter, on April 15, 1987, plaintiff's former counsel withdrew and her present attorney enrolled on her behalf. One month later, defendant's former counsel (Smith) withdrew and was subsequently replaced by his present counsel.
[2] According to the record, plaintiff filed her initial opposition brief on July 26, 1989, the day she moved to reset defendant's new trial motion on hearing. She filed a supplemental opposition memorandum on January 22, 1990. Defendant's only supporting memorandum was filed on January 23, the date the trial court rendered its judgment denying defendant's new trial application.

The record does not indicate, however, whether defendant's failure to timely file his supporting memorandum, as required by local rules, was the reason no formal hearing was held. See Rules 7(F), 7(G) and 7(H), Rules of the Third Judicial District Court. In any event, as confirmed by his counsel during oral argument here, defendant does not assign this as error.
[3] We additionally note defendant failed to timely file his required supporting memorandum with his new trial application. See Rule 7(F), Rules of the Third Judicial District Court. Under such circumstances, the trial court could have, but here apparently did not, summarily overrule his new trial application or denied defendant an opportunity to orally argue his claims. Rules 7(G) and 7(H), Rules of the Third Judicial District Court. Waiving local rule requirements, the trial court allowed defendant to file his supporting brief after the allotted 15 day period following the 1990 pretrial conference and over four years after his application was initially filed.
[4] At $105 per month, the hospital bills will be paid in full in 29.5 months. This opinion, how ever, requires defendant to make 30 payments totalling $3,150.