546 So.2d 819 (1989)
Myra Ungar Dunn, Wife of Thomas E. DUNN
v.
Thomas E. DUNN.
No. 89-CA-76.
Court of Appeal of Louisiana, Fifth Circuit.
June 7, 1989.
*821 Caren M. Morgan, Morgan & Kissel, Gretna, for plaintiff-appellee.
Gibson Tucker, Jr., New Orleans, for defendant-appellant.
Before KLIEBERT, DUFRESNE and WICKER, JJ.
DUFRESNE, Judge.
Thomas E. Dunn appeals a judgment which awarded his former wife, Myra Ungar Dunn, child support and alimony arrearages in the amount of $25,663.70, held him to be in contempt for failure to pay, and sentenced him to thirty days' imprisonment. We affirm in part, reverse in part, and render.
Myra obtained a separation from Thomas by consent judgment decreeing her free of fault on January 29, 1985. That judgment stipulated that Thomas would pay Myra $256.00 per week in alimony pendente lite and $400.00 per week in child support. It also stipulated that Thomas would pay certain debts, including tuition, school expenses, summer camp fees, and camp expenses for the two minor children, and that Myra would pay certain other debts. In the judgment there are certain of the debts which are qualified by the phrase "out-standing as of the date of the signing of this judgment." The school and camp obligations are not so qualified. The judgment stipulated that Thomas would maintain health and life insurance in force and transfer the ownership of the life insurance to Myra. (See Appendix.)
Myra obtained a divorce by default on August 26, 1985. The judgment was silent on the issue of support for either Myra or the children, but the parties apparently continued to abide by the obligations in the separation judgment.
Thomas filed a rule to decrease on April 28, 1987, alleging a change in circumstances. That rule resulted in another consent judgment, dated June 16, 1987, awarding Myra $100.00 per week in alimony and $200.00 per week in child support. There is no provision in the judgment for payment of school, camp, or health insurance expenses.
Myra filed a rule for contempt on June 9, 1988, alleging arrearages of $12,600.00. Her pleading refers only to the provisions of the June 16, 1987, judgment and not to any previous judgment. In response, Thomas filed a rule to decrease, which was met by Myra's rule to increase.
On July 18, 1987, the parties first met with the hearing officer. At trial they advised the judge that the officer had recommended the rule for contempt be satisfied by an immediate payment of $5,000.00. Myra had agreed to accept $5,000.00 for what she then claimed was an approximately $7,000.00 arrearage. Thomas did not agree with the $7,000.00 allegation but could not provide an alternative figure on arrearages; he was willing to stipulate what he had paid. The issues between the parties were whether the obligation to pay school and camp expenses was a continuing one and whether Thomas was entitled to certain credits against his obligation to pay.
Thomas' attorney then objected to going forward with the hearing and requested a continuance. One of the grounds was Myra's alleged failure to comply with the court rules. After the judge ruled against the continuance, Myra put on the record her response to Thomas' argument in favor of the continuance, alleging that in her deposition shortly before the rule she gave Thomas her income and expense sheet.
When Thomas, an attorney, was called to the stand for cross-examination, he would not answer questions with a simple yes or no answer, repeatedly trying to qualify or explain his answer. He was allowed to *822 explain how he contended he had complied with the terms of the consent judgment: although he had not made some payments directly to Myra and the children, he had made them "on behalf of Myra and the children." He considered himself entitled to credit for those payments; and he conceded that, if you do not take into consideration those payments, there was an arrearage on the weekly payments. Those payments at issue consisted of tuition paid at the request of Myra and the school administration, a payment of one of the debts Myra had assumed under the original consent separation judgment, and two payments to their son. Thomas referred Myra and the court to the detailed list of payments he'd already submitted and to which Myra stipulated. While Myra's counsel was cross-examining Thomas on his list of uncontested payments, the court interrupted and stated
... it's not fair for the Court or the other parties that are involved in the Proceedings to have to go individually through all the items, where Mr. Dunn is trying to be as difficult as he can be, in order to determine what the amounts are.
At this point the trial judge ordered the appointment of a C.P.A. to go through the records "to find out what has been paid...." He interrupted Thomas' attorney to remark, "If Mr. Dunn wants to see how difficult he can be in the Court, and I'll help him." Myra's attorney again stated that the only dispute was not with Thomas' figures but with what "he's entitled to credit for." When Thomas objected to being cast for costs of the audit, since he had provided an uncontested record of the payments he'd made, the trial judge stated
He's the one that's being difficult on it. So, we'll find out where it is. He wants to try to give evasive answers and he wants to try to do things that show how he can evade it. He thinks he's playing a game or something....
Myra filed another rule for contempt against Thomas, this time alleging his failure to turn over to the accountant certain documents alleged to be needed for the audit.
The hearing resumed seven weeks later on September 20, 1988, in effect giving Thomas the continuance he had originally asked for and giving him time for additional discovery. Myra at that point furnished Thomas with a list "of charges and credits" showing Thomas' total delinquency to be about $26,000.00. The trial judge sent the parties once again to the hearing officer, who recommended payment of arrearages totaling almost $26,000.00, including amounts for tuition, camp, and medical expenses. Myra then amended her demand from $12,600.00 to $26,182.00 over Thomas' objection that he was now being faced with a different theory of recovery without notice or opportunity to prepare a defense. Myra responded that, while the total amounts might be a surprise, Thomas knew all along that she was claiming amounts due for school and medical expenses.
Myra testified that Thomas was behind on his cash payments by $10,576.98. She added to that tuition arrearages of $4,592.61, medical insurance costs and medical expenses of $7,484.12, and out of pocket school and camp expenses of $3,529.00, totalling $26,182.61. She testified that Thomas had not paid anything in child support since the previous hearing and that the last child support payment of $100.00 was made in March. On cross-examination, she said that every time the question of tuition payments came up, she referred the school administration to Thomas. Although she sometimes paid the school bills, she always referred them to Thomas first, feeling it was his obligation under the original judgment.
The business manager for the children's private school testified that on all contracts but the one in 1985 Myra signed as the person responsible for tuition. On the 1985 contract, the responsible party was listed as Thomas. He testified that financial aid was granted the children but that it would not have been had the school known of the existence of a court document stating that Thomas was responsible for tuition. Myra represented, on application for aid, that hers were the only funds available to pay tuition. He testified that the amount due *823 on tuition was $4,596.00 and that the school did not require the signatures of both parents on the contract. On several occasions, Myra referred him to Thomas for payment of the tuition and Thomas did pay some of it.
Thomas testified concerning his list that it showed all payments he'd made either to Myra or on behalf of Myra in 1987; but Myra objected to introduction of any evidence concerning payment made prior to June 1987, the date of the most recent consent judgment. The trial judge sustained the relevancy objection and refused to allow testimony concerning payments made prior to June 1987, on the theory that Thomas could not get prospective credit for payments made to Myra or to others at Myra's request. He also testified that all this information was provided to the accountant appointed to do the audit. The trial judge also refused to let Thomas explain his understanding of the first judgment on the theory that the judgment speaks for itself. He had, however, allowed Myra to testify concerning her interpretation of the judgment. Thomas testified that, under the original consent judgment, he believed he was only liable for tuition for the 1984-85 school year but that he told Myra he would help when he could.
Thomas testified to his good record of payment until 1987, when he couldn't keep up with the payments. His inability to keep up was the motive for reducing the alimony and child support to $100 and $200 per week respectively. He testified that he had been in a law partnership with Myra's brother and her brother's friend, that the professional relationship deteriorated following the separation, and that he was eventually locked out of the office and had his cases taken away from him. At the time of the hearing, he was trying to establish a practice as a sole practitioner and simply hadn't any money. He eventually settled with his former partners and paid Myra $10,000.00 around October 1986, which brought him up to date at that time.
His income declined, and he brought a rule to reduce in June of 1987. He always intended to catch up the arrearages as soon as his business allowed. Thomas admitted adopting two other children and purchasing a house with his new wife when he was financially sound. He also admitted that two of the payments on his list were made to his son and not Myra so he could show his son that he was making support payments.
When asked what he calculated to be the arrears, he responded $9,737.63, without credit for any other payments made on Myra's behalf, including tuition payments he made directly to the school. He testified that he had his children covered under insurance until the beginning of the year [1988] but did not currently have it and that Myra never sent him any bills for submission to his insurer. He discontinued his insurance coverage when Myra informed him that she was covered under a group policy at work.
The accountant was never called to testify. The trial judge remarked, "Evidently he couldn't make anything from it [the figures supplied to him]."
The hearing on September 20, 1988, resulted in the judgment complained of. When he was ordered taken immediately to jail, Thomas moved to stay his arrest and incarceration pending his writ application; but this court denied his stay. When we received his writ application, No. 88-C-739, we granted it and ordered that it be docketed as an appeal. The trial judge then stayed the execution of Thomas' sentence pending this appeal and released him from jail. Since then, Thomas perfected his appeal. Myra has filed an additional rule for contempt, alleging additional arrearages since the hearing.
Thomas argues that the trial judge failed to follow the court rules requiring the mover in rule to prove arrearages, which exposed him to a criminal sentence without knowing the charges against him; that he allowed oral amendment of the amount alleged during trial by adding new items, which violated his due process rights; that he refused to allow him to testify concerning credits which offset the arrearages; that he erroneously ruled that he was liable for school and camp expenses and medical *824 bills; and that he erroneously held him in contempt and sentenced him to prison.
THE JUDGMENT
Thomas contends that the original consent judgment of support did not impose a continuing obligation to pay school, camp, and health insurance expenses. He further contends that, even if they are deemed to be continuing obligations, the second consent judgment, rendered without reference to them, terminated any responsibility for these items. Myra argues that the second consent judgment modified only the cash portion of the previous judgment, leaving in force any other obligations of the first judgment. We believe that the effect of the two judgments, three including the divorce judgment which was silent on the issue of support, is to create confusion.
"[A]limony pendente lite is terminated by the signing of a final judgment of divorce when the divorce decree makes no mention of future alimony." Halcomb v. Halcomb, 352 So.2d 1013, 1016 (La.1977). Child support, however, has "a legally independent basis and is not a mere incident of the separation decree which terminates with the dissolution of the marriage." Lewis v. Lewis, 404 So.2d 1230, 1234 (La. 1981). Accord: Berthelot v. Berthelot, 425 So.2d 985 (La.App. 5th Cir.1983); Wilde v. McMilleon, 513 So.2d 551 (La.App. 2d Cir. 1987). Consequently, the award of alimony pendente lite to Myra terminated with the judgment of divorce, and no obligation to pay permanent alimony arose until the consent judgment of June 1987. The child support obligation continued until modified by that same consent judgment.
There is no claim of any alimony arrearages accruing prior to the June 1987 judgment, so any issue raised concerning the existence of a valid judgment of spousal support prior to the June 1987 judgment is moot. However, in order to properly calculate the child support arrearages, it is necessary to know that the original consent judgment of child support carried over after the divorce until it was modified by the June 1987 consent judgment. The inquiry then becomes, what items of support in the original child support judgment survived modification in the later judgment?
In his rule to decrease alimony and child support, Thomas refers only to the cash amounts and makes no representations with regard to any other obligations under the first decree. This could, of course, mean that Thomas believed, as he has argued in brief and to the trial judge, that his obligation to pay school, camp, and health insurance expenses was not a continuing one but applied only to those expenses already accrued at the time of the separation. It could also mean that he was only asking for relief from his cash payments and not from any other obligation under the judgment of January 29, 1985. By virtue of his own evidence, we see that Thomas made payments to the private school which he labels as "support payments."
In LeBlanc v. LeBlanc, 472 So.2d 312 (La.App. 3rd Cir.1985), the original child support judgment required the father to keep his children covered on a medical insurance policy. A subsequent child support decree lowered his cash support and mentioned nothing about the policy. The father argued, as does Thomas, that the modification of the prior order relieved him of the duty to keep the children covered on the policy.
Our review of the record shows that the hearing which lead [sic] to the modification decree dealt only with a question of a decrease in monthly child support payments. The modification decree ... merely modified the prior child support by reducing the amount of monthly child support payments that defendant owed plaintiff....
... Defendant never asked for termination of the duty to keep his children on his group medical insurance plan and, therefore, it was never considered by the trial judge during the hearing of the motion to modify the child support decree....
At 318-19. This court, Tschirn v. Tschirn, 434 So.2d 113 (La.App. 5th Cir.1983), held under similar circumstances that a judgment rendered on a rule to increase was *825 intended to cover only cash payments of support and that Tschirn's obligation to pay tuition and medical expenses continued.
We do not believe that the trial judge erred in finding that all the obligations of the first judgment of child support remained in effect throughout the litigation, with the exception of the cash payments specifically mentioned in the later judgment. We affirm his award of arrearages but in a lesser amount.
The evidence on arrearages consists only of the documents filed by Thomas and Myra, since the trial judge permitted no real explanation of these lists. We must calculate what was due under the June 1987 judgment, subtract the amounts paid by Thomas, and determine what he still owed. Cash payments of $300 per week were ordered, and there were sixty-five weeks between the date of the support judgment of June 1987 and the rule of September 1988. Cash support in the amount of $19,500.00 should have been paid during that period; but Thomas paid only $8,023.02. The cash payment arrearages total $11,476.98. In addition to the cash support, Thomas paid $1,239.35 in camp and school expenses; but Myra paid $3,529.00 in camp and school expenses that Thomas should have paid. The total arrearages for weekly support, camp and school are $15,005.98. The original judgment also requires Thomas to provide health insurance on the children, which he claims to have done until Myra told him she was obtaining coverage at work. Myra's list shows that she paid $77.32 per month for coverage from May of 1987 until the date of the September 1988 rule, a total of $1,237.12. Thomas is liable for this amount, bringing his total arrearages to $16,243.10. Myra also claims that $6,247.00 in medical expenses for the children which she paid were due by Thomas under the original judgment. However, the judgment only requires that Thomas maintain insurance and does not impose upon him the responsibility for payment of non-covered medical expenses. Therefore, he does not owe this latter amount to Myra.
DUE PROCESS AND CONTEMPT
Rule VIII, Domestic Relations Section Rules, Twenty-Fourth Judicial District Court, requires:
A. All litigants in rules for increase, decrease or awarding of alimony and/or child support shall complete a "Financial Statement" ... and a "Fact Sheet" ... and forward a copy of same to the opposing party at least 72 hours prior to the date set for hearing.
B. The original of the Financial Statement... and Fact Sheet ... shall be presented to the Court on the day set for hearing.
C. Each rule and petition to make executory alimony or support judgments executory or in which a judgment for contempt is sought for failure to pay alimony or support judgments shall be accompanied by an original and copy for service of an affidavit executed by the party filing the said pleadings setting forth the following:
(a) A computation of all payments due that have accrued under the judgment which are unpaid; and
(b) An itemized list of all payments received showing date of receipt.
The record reveals that Myra did not furnish Thomas or the court with the requisite affidavit and list, either with the motion for contempt and arrearages or at the time of the first hearing. She did furnish a hand-written, unsigned list with categories such as "arrearage/credit", "paid by Myra", "additional owed", "reimburse", and "Tom pd."; but this list does not comply with Rule VIII. The issue then is whether her failure to comply deprives Thomas of due process. A second issue is whether allowing Myra to amend her demand orally at the second hearing deprives Thomas of due process.
With regard to each of these issues, Myra argues that Thomas, especially since he is an attorney, was totally aware of everything she was claiming in her rule for arrearages and for contempt. She claims *826 that information and documents had been previously exchanged by the parties, both in an informal meeting and at her deposition. She attaches to her brief a copy of a subpoena duces tecum requiring her to bring certain documents to the deposition which provided Thomas with all the information she would have provided had she complied with the local court rule. There is nothing in the record to substantiate this allegation, but we can see from the arguments made at the first hearing that Thomas was aware that school, camp, and medical expenses were being sought. Myra concluded that Thomas "knew what the provisions of the Judgments were and he knew as an attorney, better than the average layman, that he faced contempt for failing to meet those court ordered obligations."
Thomas has not cited us to any law, nor are we aware of any, which would deny the trial judge the discretion to waive the local rules in a particular case. We are also unable to see any prejudice to Thomas by this waiver, since he has not shown us what other testimony or evidence he would have introduced in his defense had he been furnished with the appropriate affidavit. He testified and introduced his records of payments, Myra testified, the headmaster of the private school testified, and the judgments in question were in the record for the trial judge to consider. We note as did the Supreme Court in Haynesville Merchantile v. Bossier City, 522 So.2d 1085, 1087 (La.1988), "the parties probably introduced all of their evidence on the issue into the record in this case." All the evidence which could have been considered by the trial judge was considered.
La.C.Civ.P. art. 1154 permits amendment of pleadings to conform to evidence introduced at trial.
When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleading, such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby, and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense on the merits. The court may grant a continuance to enable the objecting party to meet such evidence. (Emphasis added.)
The trial court has much discretion in deciding whether to permit amendments to pleadings. Shurman v. Lewis, 465 So.2d 78 (La.App. 5th Cir.1985). Myra's testimony concerning amounts due for school, day camp, and medical expenses does not raise a new issue but only adds to the issue already raised: what arrearages are due under the judgments of support? Since Thomas was aware that Myra was seeking arrearages due under the judgment, although he may not have been previously aware of the exact dollar amount, we find no error in the trial judge's admission of evidence on amounts due for school, camp, and medical expenses. The court in Abrams v. Dinh, 471 So.2d 994, 997 (La. App. 1st Cir.1985), noted that the complaining party "did not ask for a continuance to respond to this claim [of additional damages] and failed to demonstrate the evidence would prejudice its defense on the merits." It concluded that, despite objection to the introduction of this evidence, the trial court did not abuse its discretion by allowing the evidence to expand the pleadings.
We see no abuse of the trial court's discretion in waiving the court rule requiring the Myra's affidavit and in permitting an expansion of the pleadings to conform to the evidence, even in the face of criminal sanctions for contempt.
This court has recently held, Champagne v. Champagne, 541 So.2d 933 (La. *827 App. 5th Cir.1989), that imposition of a determinate sentence which does not contain a "purge clause" constitutes criminal contempt, citing Hicks on behalf of Feiock v. Feiock, 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988). The trial court's judgment sentenced Thomas to thirty days' "flat" time in the Jefferson Community Correctional Center, a sentence clearly without a "purge clause." Consequently, since Thomas' sentence did not contain a "purge clause", his conviction of contempt must be reviewed in light of the constitutional protections afforded criminal defendants. Champagne, supra; Hoffman v. Hoffman, 480 So.2d 1031 (La.App. 5th Cir. 1985). One of the protections afforded criminal defendants is the right to have the offense charged proved beyond a reasonable doubt.
The California statute under scrutiny in Feiock, supra, created a presumption of guilt: "proof that ... the parent was present in court at the time the order [of support] was pronounced and proof of noncompliance therewith shall be prima facie evidence of a contempt...." California Civ.Proc.Code Ann. section 1209.5 (1982). While Louisiana has no equivalent statute, Thomas was brought into court on a rule for contempt, requiring him to show cause why he should not be held in contempt. This, in effect, placed the burden of proof on him. Referring to the California statute, the Feiock court stated at 1432-33, "If applied in a criminal proceeding, such a statute would violate the Due Process Clause because it would undercut the State's burden to prove guilt beyond a reasonable doubt."
Thomas claims that the trial judge's "outspoken and repeatedly displayed displeasure" with him is inexplicable and led to his punitive judgment. We do agree that the language of the trial judge was often intemperate. We also agree that Thomas' reasonable belief that his obligation under the June 1987 judgment did not include tuition, camp, and medical expenses is a sufficient defense to Myra's contempt charge. Tschirn, supra. We hold that Myra has failed to prove contempt on Thomas' part and reverse this portion of the judgment.
CREDITS
Thomas argues that the trial judge failed to give him credit for payments made to his son, to the private school, and to Myra from funds received from a settlement with his former law partners. He also complains that the trial judge failed to allow any credit for payments made prior to the judgment which reduced his cash payments. Myra argues that Thomas is entitled to credit only for payments made directly to her and that, since she was claiming arrearages only subsequent to the June 17, 1987, judgment, any credits prior to that date cannot be applied against future deficiencies.
Thomas' child support obligation can be satisfied only by payment to Myra and not to the couple's minor child. Bertrand v. Bertrand, 401 So.2d 552 (La. App. 3rd Cir.1981). Consequently, Thomas is not entitled to credit for any payments made to his son. We have given him credit for his payments directly to the private school, as we find these payments were made on behalf of the children and at Myra's request.
Thomas may have a potential claim against his wife in a subsequent partition of their former community of acquets and gains, but it is not yet equally liquidated and demandable for purposes of set off or compensation. Hamilton v. Hamilton, 421 So.2d 291 (La.App. 1st Cir.1982). The original consent judgment contemplates that any credits between them will be settled at the time of the partition.
We affirm the judgment of the trial court insofar as it awards arrearages, but we modify the amount. We render judgment in the amount of SIXTEEN THOUSAND TWO HUNDRED FORTY-THREE AND 10/100 DOLLARS ($16,243.10), plus interest and costs of the proceeding in the trial court, in favor of Myra Ungar Dunn and against Thomas Dunn. We reverse the finding that Thomas Dunn was guilty of contempt and vacate his sentence.
*828 AFFIRMED IN PART, MODIFIED AND RENDERED, REVERSED IN PART, SENTENCE VACATED

APPENDIX

CONSENT JUDGMENT
This matter came on for hearing on the 29th day of January, 1985.
PRESENT: Myra Ungar Dunn, through her attorney of record, Lynne W. Wasserman,
Thomas E. Dunn, appearing in proper person.
After hearing the evidence, reviewing the record, and considering the consent of the parties;
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Myra Ungar Dunn is hereby granted a separation "a mensa et thoro" in her favor and against Thomas E. Dunn.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Myra Ungar Dunn is found to be free from fault in causing the separation.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Thomas E. Dunn shall pay unto Myra Ungar Dunn the sum of $256.00 in alimony pendente lite every week and the sum of $400.00 in child support every week. This obligation of paying alimony pendente lite shall terminate in the event of the death of Myra Ungar Dunn.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Myra Ungar Dunn be granted the temporary sole custody of the minor children of the marriage, namely, Rebecca Davida and Samuel Thomas.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Thomas E. Dunn shall be responsible for paying the following debts:
1. American Express bill outstanding as of the date of the signing of this Judgment;
2. Shell Oil bill outstanding as of the date of the signing of this judgment;
3. All tuition and school expenses for the minor children;
4. All summer camp fees and expenses for the minor children.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Myra Ungar Dunn shall be responsible for paying the following debts:
1. First mortgage in favor of Union Savings and Loan Company on the family home located at 3944 Uri Street, Metairie, Louisiana;
2. Mortgage in favor of GMAC on the 1983 Oldsmobile station wagon, in the monthly amount of $343.50;
3. Loan in favor of First National Bank of Jefferson in the monthly amount of $150.88;
4. Bill Hayden Pool Service bill outstanding as of the date of the signing of this Judgment;
5. Sears bill outstanding as of the date of the signing of this Judgment;
6. J.C. Penney bill outstanding as of the date of the signing of this Judgment;
7. General Tire bill outstanding as of the date of the signing of this Judgment;
8. Master Charge bill outstanding as of the date of the signing of this Judgment.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that both parties shall receive credit for the community debts they have paid at the time of the partitioning of the community property.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Thomas E. Dunn will maintain and keep in force all existing policies of health insurance covering Myra Ungar Dunn and the minor children. Furthermore, Thomas E. Dunn is ordered to maintain the existing New York Life life insurance policy, bearing policy No. XXXXXXXXXX, insuring his life in the face amount of $500,000.00. Furthermore, Thomas E. Dunn is ordered to execute any and all documents necessary to transfer the ownership of said life insurance policies to Myra Ungar Dunn, and to immediately *829 name Myra Ungar Dunn as the beneficiary thereof.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Myra Ungar Dunn shall have the use of the family home, and that she may remain in the family home until such time as the said Myra Ungar Dunn shall agree to sell said home and said home has in fact been sold.
JUDGMENT READ, RENDERED AND SIGNED in open Court in Gretna, Louisiana, this 29th day of January 1985.
 /s/ [Signature]
 JUDGE
RESPECTFULLY SUBMITTED:
/s/ Lynne W. Wasserman
LYNNE W. WASSERMAN
FAWER, BRIAN, HARDY & ZATZKIS
700 Camp Street
New Orleans, Louisiana 70130
Telephone: (504) 528-9500
Attorneys for Myra Ungar Dunn
/s/ Thomas E. Dunn
THOMAS E. DUNN
IN PROPER PERSON