JASPER E. JONES, Judge.
This is a suit to establish paternity brought by the State of Louisiana through the Department of Health and Human Resources against the defendant Kenneth Wray Rollins. The trial court rendered judgment against the defendant finding him to be the natural father of the minor child Brandon Steven Kimball. Kenneth Wray Rollins appeals the judgment of the trial court. We affirm.
FACTS
On June 8, 1984 Jeanie Lynn Kimball gave birth to Brandon Steven Kimball in Monroe, Louisiana. On September 17,1985 the State filed a suit alleging that Kenneth Wray Rollins was the natural father of the child.
Kenneth Rollins was married to Patsy Rollins at the time he met Jeanie Lynn Kimball in 1981. The defendant and Ms. Kimball, referred to hereinafter as Lynn, began an affair shortly after their introduction.
At trial, Lynn testified she had sexual relations with the defendant in September of 1983 resulting in the conception of Brandon. The defendant admitted to the affair with Lynn but denied having sexual relations with her during this time period.
Tests were performed on blood samples given by the defendant, the mother, and the child. Pat Wojtkiewicz, supervisor of the serology section of the North Louisiana Criminalistics Laboratory, was qualified as an expert and testified to the results of the blood testing performed there. Mr. Wo-jtkiewicz stated the analysis of the blood test revealed the defendant could not be excluded as the father. The blood test evaluations further revealed the defend *687 ant’s paternity index is 633, or the defendant is 633 times more likely to be the father of the child than another randomly selected caucasion male. Mr. Wojtkiewicz also stated the relative probability of paternity in this case is ninety-nine point eight percent (99.8%).
In support of the allegation of paternity, the State introduced evidence of the defendant’s informal acknowledgment of the child, including two photos of the defendant and the infant; an excerpt from a baby book containing the defendant’s signature; and a postcard mailed by the defendant to Lynn in September of 1984 which states as a postscript “take care of my boy.”
Based upon this evidence, the trial court concluded the State established by a preponderance of the evidence the defendant is the father of Brandon Steven Kimball.
On appeal the defendant contends the trial court placed undue emphasis on the testimony of Lynn and the expert Pat Wo-jtkiewicz. The defendant further contends the trial court erred in finding him to be the father of the child because the State did not prove paternity by a preponderance of the evidence.
APPLICABLE LAW
The State bears the burden of proving by a preponderance of the evidence the defendant is the father of the child. LSA-C.C. art. 209;[1] State v. Bolden, 519 So.2d 362 (La.App. 2d Cir.1988); State through the Department of Health and Human Resources in the Interest of Johnson v. Rice, 482 So.2d 873 (La.App. 2d Cir.1986). The trial court’s determination of factual and credibility issues should not be disturbed by an appellate court in the absence of manifest error. State v. Bolden, supra; Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring, 283 So.2d 716 (La.1973).
DID THE STATE ESTABLISH PATERNITY BY A PREPONDERANCE OF THE EVIDENCE
The events of the summer of 1983 are in dispute. Lynn testified in September of 1983, after a brief period of estrangement, she was living with the defendant in an apartment in Alexandria, Louisiana. She stated she and the defendant engaged in sexual relations on a daily basis throughout the month of September. She further stated she did not have sexual relations with any men other than the defendant after July 6, 1983 when she had her birth control device removed. Lynn left the apartment in Alexandria and returned to West Monroe in late October or early November and discovered she was pregnant on November 21, 1983.
Lynn further testified the defendant admitted to her and to her mother that he was the father of the child when he became aware she was pregnant. This statement was corroborated by the testimony of Lynn’s mother, Yvonne McClain. Yvonne McClain stated the defendant expressed to her his pride at the possibility of having a baby boy. She further recounted incidences when the defendant contributed cash for payment of her daughter’s medical bills during her pregnancy and later contributed $1,200 to $1,500 after Lynn gave birth. *688 The defendant visited Lynn and the baby one week after the infant’s birth, while Ms. McClain was also present. During this time, Ms. McClain stated the defendant indicated he intended to support the child and further expressed his desire to have the child’s name on the birth certificate changed from Kimball to Rollins.
Michelle Landry, a welfare eligibility worker contacted by Lynn, testified she spoke with the defendant and he acknowledged the child as his during their telephone conversations. The defendant denied this statement in his testimony. The trial court discounted Ms. Landry’s testimony as “tainted by the veracity of the information given by the mother.”
The defendant denied continuing the relationship with Lynn past June of 1983. He testified he terminated the relationship with her because he discovered she had sexual relations with other men, including his brother Gerald Rollins. He denied giving any money to Lynn other than $100.00 for repair of her car. He denied signing the baby book or writing the postcard and suggested Lynn had forged his signature. He denied having sexual relations with her in August or September and further testified he never stated to anyone that the child was his son.
The defendant did admit to going on a trip to Las Vegas with Lynn and another male friend Kenneth Miller in the latter part of August. He further admitted to visiting with Lynn during her pregnancy while on business trips to the Monroe area. He stated he saw Lynn at least twice after the child was bom. On one of these occasions the defendant and the child were photographed reclining on a couch in Lynn’s residence. He admitted his divorce from Patsy Rollins in May of 1985 was at least in part precipitated by his relationship with Lynn.
The defense presented the testimony of Gerald and Randall Rollins, both brothers of the defendant, and Patsy Rollins, the defendant’s wife during the critical time period. All professed awareness of the defendant’s on-going relationship with Lynn during the defendant’s marriage to Patsy. As to the defendant’s allegations of a relationship between his brother Gerald and Lynn, Gerald testified he did have sexual relations with Lynn during April of 1983, four to five months before the time of conception.[2] Randall Rollins recalled an occasion in West Monroe at the home of his in-laws, the Hernandezes, when the defendant drove Lynn and the baby to the Hernandez home for a visit. When asked by counsel whether it was common knowledge within the Rollins family “whose child that was” Gerald replied, “not that I know of.” Patsy Rollins testified she was aware the defendant’s relationship with Lynn was ongoing through the summer. She further stated the defendant rotated his sleeping arrangements during this time period between the rented apartment in Alexandria and his wife’s home whenever “[Lynn and the defendant] were fighting.”
Credibility issues are within the domain of the trial court. The trial court’s reasons for judgment reflect the court accepted the testimony of the mother over the defendant’s denial of paternity and we find no error in the court’s judgment. The record reveals in addition to the testimony of the mother and the results of the blood test, there was presented corroborating evidence all of which combined reflect the State carried its burden of proof. We note no defense evidence outside defendant’s denial sufficient to rebut the State’s evidence. We conclude the State proved paternity by a preponderance of the evidence. We find no error in the judgment of the trial court.
CONCLUSION
For the reasons expressed above we affirm the judgment of the trial court at defendant’s costs.
AFFIRMED.

. Art. 209. Proof of filiation
A. A child not entitled to legitimate filiation nor filiated by the initiative of the parent by legitimation or by acknowledgment under Article 203 must prove filiation as to an alleged living parent by a preponderance of the evidence in a civil proceeding instituted by the child or on his behalf within the time limit provided in this Article.
B. A child not entitled to legitimate filiation nor filiated by the initiative of the parent by legitimation or by acknowledgment under Article 203 must prove filiation as to an alleged deceased parent by clear and convincing evidence in a civil proceeding instituted by the child or on his behalf within the time limit provided in this Article.
C. The proceeding required by this article must be brought within one year of the death of the alleged parent or within nineteen years of the child’s birth, whichever first occurs. This time limitation shall run against all persons, including minors and interdicts. If the proceeding is not timely instituted, the child may not thereafter establish his filiation, except for the sole purpose of establishing the right to recover damages under Article 2315. A proceeding for that purpose may be brought within one year of the death of the alleged parent and may be cumulated with the action to recover damages.
D. The right to bring this proceeding is heritable.

. The other man the defendant stated Lynn had sexual relations with, Robert Bates, did not testify.