554 So.2d 787 (1989)
Edith A. PERKINS
v.
Rick H. VEGA.
No. 89-CA-418.
Court of Appeal of Louisiana, Fifth Circuit.
December 13, 1989.
Writ Denied February 23, 1990.
Raymond C. Burkart, Jr., New Orleans, for plaintiff-appellant.
Ernest A. Burguieres, III, New Orleans, for defendant-appellee.
*788 Before GAUDIN, GRISBAUM and WICKER, JJ.
GAUDIN, Judge.
This appeal is concerned with the burden of proof required by a plaintiff in a paternity proceeding. Edith A. Perkins petitioned to have Rick H. Vega named the father of her nine-year-old son. She did not succeed because the trial judge found that she "... failed to carry her burden ..."
On appeal, Ms. Perkins assigns three district court errors. She contends that the trial judge was wrong in (1) not finding that she had submitted sufficient proof, (2) in reopening the trial after both sides had rested and (3) in refusing to grant a new trial.
Although there is considerable merit in appellant's first contention, we cannot agree that the trial judge abused his discretion or that the record does not support the judgment adverse to the petitioner. For the following reasons, we affirm.
According to Ms. Perkins' testimony, she first met Vega in a bowling alley in June of 1979. On the night of August 26, 1979, Ms. Perkins said that Vega agreed to drive her home. Before being taken to her residence, appellant stated, she and Vega went to Vega's house (he lived with his parents) where they engaged in sexual intercourse for the first and only time.
Ms. Perkins' son was born on May 6, 1980. Appellant said that while she had sex with other men before and after August 26, 1979, these sexual encounters were so far removed from the time of conception that only Vega could possibly be the father. Her last intercourse, before August 26, 1979, she said, was in July of 1978; and the next time she had intercourse after August of 1979 was in February of 1981.
Vega testified that he did not know Ms. Perkins in 1979 and that he did not have intercourse with her. In any event, Ms. Perkins did not inform Vega of his alleged parenthood until October of 1987, when the young boy was over seven years of age. Vega stated that he was at a playground when Ms. Perkins approached. Vega said:
"She came where I used to play ball. I'm sure that's a few months back or maybe a year ago, because it's going on a while.
"I was leaving and a girl came up to my car as I was getting in the car and she says, `You don't know me. You might not remember me, but I'm Edie Perkins and I have something to tell you that I think you should know.'
"I said, `You do,' and she told me that she has a son by me and I, of course, was in shock and I asked her, you know, `How do you know this,' and she said, `Well, I just know and I don't want anything from you. I'm not looking for anything, but I just thought you should know.'"
At trial, plaintiff testified and she called one witness, Dr. Leslie Bryant, appointed by the court to conduct blood tests on Ms. Perkins, her son and Vega. The admissibility and effect of blood tests are governed by LSA-R.S. 9:397.3, which now reads:
"A. A written report of the results of the initial testing, certified by a sworn affidavit by the expert who supervised the tests, shall be filed in the suit record. A notice that the report has been filed shall be mailed by certified mail to all parties by the clerk of court or shall be served in accordance with Code of Civil Procedure Article 1314. A party may challenge the testing procedure within thirty days of the date of receipt or service of the notice.
"B. If the court finds there has been a procedural error in the administration of the tests, the court shall order an additional test made by the same laboratory or expert. If there is no timely challenge to the testing procedure or if the court finds there has been no procedural error in the testing procedure, the certified report shall be admitted in evidence at trial as prima facie proof of its contents, provided that the party against whom the report is sought to be used may summon and examine those making the original of the report as witnesses under cross-examination.
"C. Any additional testing ordered by the court pursuant to this Part shall be proved by the testimony of the expert.

*789 "D. If the court finds that the conclusions of all the experts as disclosed by the reports, based upon the tests, are that the alleged father is not the father of the child, the question of paternity shall be resolved accordingly. If the experts disagree in their findings or conclusions, the question shall be submitted upon all the evidence."
An amendment by the legislature in 1988 deleted the former final sentence of Section D, which stated: "The tests and the testimony of the mother alone shall not be sufficient grounds for determining that the man is the father of the child."
Dr. Bryant said that the computerized blood tests indicate that Vega has a 99.2 per cent chance of being the father. Out of 1,000 men, in Dr. Bryant's opinion, only eight men could be excluded as the possible father.
While R.S. 9:397.3 (before and after the 1988 amendment) directs the trial judge to dismiss a paternity action if blood tests show that the defendant is not the father, the statute gives no positive direction to the trial judge if the blood tests strongly indicate that he is the father. Dr. Bryant said that blood tests cannot prove paternity beyond any doubt.
Here, in the wake of Dr. Bryant's testimony, the trial judge considered and was swayed by other evidence. It is likely he considered Vega's total denial and the lack of any relationship between Ms. Perkins and Vega other than the alleged one-night encounter. Also in the record is the testimony of Ms. Perkins' friend, Cheryl Desrochers, who said that approximately nine years ago, appellant showed her a picture of a person she identified as her son's father. The man in the photograph, Ms. Desrochers said, had long hair and did not appear to be Vega. Vega said he never had long hair.
No doubt the trial judge was influenced by the lack of any testimony, other than Ms. Perkins', placing Ms. Perkins and Vega together on the evening of August 26, 1979. After both sides had rested, the trial judge advised both attorneys that he would like to reopen the proceeding and further question Ms. Perkins and Vega. Over objection of both counsel, the trial judge then asked appellant and appellee a series of questions. It is clear from the record that the trial judge was trying to determine, in his own mind, whether Ms. Perkins and Vega were together the night of August 26, 1979.
Following the questioning, the trial judge stated:
"All right. I'm ready to rule. After listening to the evidence and the cases put forth by both attorneys, I find that although there is a possibility that Mr. Vega could be the father, I don't think that the burden of proof was sufficient to prove that he is the father and, therefore, I'm going to rule in favor of Mr. Vega.
"For the basis of the record, one of the important things that I looked at was the fact that Ms. Perkins brought no evidence to place her at the bowling alley other than her testimony and that bothered me a great deal.
"It was uncontroverted that Mr. Vega bowled, but not one of Ms. Perkins' friends stepped forward or brought forward any evidence that she was there at the bowling alley or frequented it which would give occasion to their meeting and their `date' or happenstance."
There is neither statutory authority for nor prohibition against the reopening of a civil proceeding by a trial judge once both sides have rested. A trial judge does, however, have broad discretion in making inquiries[1]; and LSA-C.C.P. art. 1631 directs him "... to control the proceedings at the trial, so that justice is done." Regardless, Ms. Perkins' objection now on appeal to the late and certainly unique questioning by the trial judge seems somewhat inappropriate inasmuch as the trial judge's questions were unmistakably meant to aid her cause.
Ms. Perkins cites State v. Williams, 375 So.2d 1379 (La.1979), wherein the Louisiana Supreme Court reversed an armed robbery conviction because the trial judge's hypothetical *790 questions of the defendant's psychiatrist witness constituted a prohibited comment on the facts. This was a criminal jury case, unlike Ms. Perkins' trial, and is of no moment here.
While we do not necessarily condone the trial judge's reopening of the Perkins-Vega trial, we cannot say that the additional testimony either prejudiced appellant or entitles her to a reversal of the district court decree.
After this judgment was handed down, Ms. Perkins filed a motion for a new trial saying that she wanted to call three additional persons. The trial judge denied the request because these witnesses, with due diligence, could have been located and/or obtained during the regular trial. See LSA-C.C.P. art. 1972. Such a denial was not an abuse of judicial discretion.
In affirming the trial judge, we hold, as did he, that a defendant in a paternity action, despite adverse blood test results forming prima facie proof of fatherhood, can overcome this presumption by presenting convincing contrary evidence.
Finally, we note this. Although the trial judge in his reasons for judgment did not directly refer to credibility, this was a factor. Had the trial judge placed more credence in Ms. Perkins' testimony than that of Vega and Ms. Desrochers, the outcome could have been different.
AFFIRMED.
NOTES
[1] See La Pierre v. Gibson, 420 So.2d 990 (La. App. 4 Cir.1982).