574 So.2d 1297 (1991)
STATE of Louisiana and Coleen Joseph, Plaintiff-Appellant,
v.
Cornell MONTGOMERY, Defendant-Appellee.
No. 89-871.
Court of Appeal of Louisiana, Third Circuit.
February 6, 1991.
Writ Denied April 5, 1991.
*1298 Michael L. Schilling, Jr., LaFayette, for plaintiff/appellant.
Olivier & Brinkhaus, John L. Olivier, Sunset, for defendant/appellee.
Before FORET, KNOLL and KING, JJ.
KING, Judge.
The issue presented by this appeal is whether the trial court erred in finding that the plaintiff had not met its burden of proof in a paternity action.
The State of Louisiana (hereinafter plaintiff), brought suit against Cornell Montgomery (hereinafter defendant), pursuant to La.R.S. 46:236.1 B(3), (4), to prove paternity and obtain child support from defendant for an illegitimate child, known as Shameika Joseph (hereinafter the child), born to Coleen Joseph (hereinafter Ms. Joseph).
After a trial on the merits, the matter was taken under advisement. The trial court rendered written reasons for judgment rejecting the demands of plaintiff. A formal written judgment was signed. Plaintiff timely appeals. We affirm.

FACTS
The child was born on May 3, 1987. At trial, the child's mother, Ms. Joseph, testified that she met defendant and began dating him during the summer of 1982. Ms. Joseph further testified that she and defendant had sex about once a week during the time they dated, which was over a period of four and one-half years. Ms. Joseph testified that, while she was dating defendant, she did not have sex with anyone else, but that she did have sex with someone else after the child's birth.
Ms. Joseph was not certain of the date, but she testified, in the year prior to the child's birth, she became pregnant with defendant's child and they decided that she should have an abortion. The abortion was performed in Baton Rouge, Louisiana, but Ms. Joseph could not remember when and no longer had any documents or records connected with the abortion.
Ms. Joseph testified that she knows she became pregnant with the child in August, 1987, because she first missed her menstrual cycle in September, 1987. However, Ms. Joseph did not see a doctor until she was about three and one-half or four months pregnant and the doctor then confirmed her pregnancy. Ms. Joseph could not remember when she first saw the doctor. The only date Ms. Joseph could remember with specificity was September 15, 1986, which was her father's birthday, because during a birthday party for him, she testified defendant telephoned and told her that he wanted to "break up."
Plaintiff had no other witnesses testify except Ms. Joseph. Defendant testified and called two witnesses to testify.
*1299 Defendant testified at trial that he began dating Ms. Joseph in July, 1983 and that their relationship lasted about two years and ten months. Defendant stated that he and Ms. Joseph had sex irregularly, sometimes once a week, other times, once every two weeks. Defendant further stated that the last time he and Ms. Joseph had sex was in the latter part of June, 1986. Defendant said he remembered this because, around July 4, 1986, he and Ms. Joseph stopped speaking for about two weeks. On July 19, 1986, defendant and Ms. Joseph attended a Peace Officer's Ball, but defendant testified that they did not have sex that night. Lastly, defendant testified he knew Ms. Joseph was "fooling around" with other men because he saw her out with other men during the period of time he was dating her.
David Glaude testified that he has been defendant's friend since childhood and had introduced Ms. Joseph to defendant during the summer of 1983. Mr. Glaude stated that he knew defendant and Ms. Joseph broke up in May or June, 1986 because defendant spent all of his free time with him or his family to ease the "bad feelings" due to the breakup.
Dwayne Paul testified that he knew defendant because he lived on the street behind him and that he met Ms. Joseph through defendant. Mr. Paul stated he did not know how long Ms. Joseph and defendant dated nor when they broke up, but that he knew, through hearsay, that Ms. Joseph dated other men while she dated defendant. Mr. Paul said that he heard, through hearsay, that defendant was getting married, but not to Ms. Joseph.
An order for blood testing of plaintiff, defendant, and the child, pursuant to La. R.S. 9:396, et seq., was obtained. Blood tests were performed and a written report of the results was filed in the record, and was admitted into evidence pursuant to La. R.S. 9:397.3. A copy of that report is attached as an appendix to this opinion. The report stated that defendant could not be excluded as the biological father of the child because they shared genetic markers. Further, the report of the test results stated that "... the probability of [defendant's] paternity is 99.78%, as compared to an untested, unrelated man of the North American Black population."
After a full trial on the merits, the trial court took the matter under advisement. In written reasons for judgment, the trial court ruled that the plaintiff had failed to meet its burden of proof. In his written reasons for judgment, the trial judge found that Ms. Joseph was not credible because she had trouble remembering dates and could not state with certainty the year in which she had an abortion or the month in which she visited the doctor and had her pregnancy confirmed. The trial court found that, by her own admission, Ms. Joseph socialized and dated other men during the summer she became pregnant though she denied having sex with these men. The trial court also found that there was no corroboration whatever of Ms. Joseph's testimony because plaintiff did not present any other witnesses. The trial court noted that no family member or relative or friend was brought forward to support Ms. Joseph's version of the facts. On the other hand, the trial court ruled that defendant presented corroboration of his version of the facts he claimed occurred.
Finally, the trial judge stated that:
"In the light of the foregoing this Court cannot hold that the State has met its burden of proof. The evidence does not preponderate in favor of the State but in favor of the defendant, whose corroborated testimony outweighs the uncorroborated testimony of Ms. Joseph and the blood tests, which the Court can only accept under these circumstances as not excluding the defendant as the father."
Plaintiff contends that the trial court erred in finding that it did not meet its burden of proof. Specifically, plaintiff alleges that the trial court's rejection of its demands was founded upon the following erroneous factual findings;
(1) The testimony of David Glaude corroborated defendant's claim that the relationship ended in May or June;

*1300 (2) The testimony of Dwayne Paul showed that Ms. Joseph dated other men during the summer and that defendant began to date his present wife in September;
(3) The testimony of Ms. Joseph was uncorroborated; and
(4) That the record was completely devoid of any information which might assist the Court in evaluating the conclusory language of the report of the blood test.
We shall address each of these factual issues.
First, we find from reviewing the record that Mr. Glaude did testify that he personally knew that the relationship between defendant and Ms. Joseph ended in May or June, 1986. This corroborates defendant's testimony that they terminated their relationship at that time.
Second, we find that the trial judge was mistaken in his assessment of Mr. Paul's testimony. Mr. Paul did not personally remember anything about the relationship with defendant and Ms. Joseph or about her relationship with other men during the summer of 1986 but had only heard through hearsay.
Third, plaintiff's only witness was Ms. Joseph. The record shows no one else testified to corroborate her testimony. While defendant did admit to a sexual relationship with Ms. Joseph, he specifically denied that it was still ongoing near the time of conception. Clearly, this testimony contradicts Ms. Joseph's testimony.
Lastly, the only evidence, relating to the blood tests, introduced by plaintiff is the written report of the results of those tests. The results consist of two columns listing several letters and numbers and a written conclusion.
We note that the various columns contained in the report of the blood test results show paternity indexes of 1.40, 1.39, 1.15, 1.01, 1.22, 166.61, and a combined paternity index of 460 to 1 and a probability of paternity of 99.78%, which is qualified by the statement of the conclusions that defendant cannot be excluded as the father of the child and that the probability of paternity is as compared to an untested, unrelated man of the North American black population. No other explanation of these test results is contained in the record.
The trial court noted in its written reasons for judgment that:
"The record is completely devoid of any information which might assist the Court in evaluating the conclusory language of the blood test quoted above. The first part of that conclusion states that Mr. Montgomery cannot be excluded as the father. The second part of the conclusion leaves the Court completely in the dark as to what the quoted `probability of paternity' means, with respect to this defendant in this case. It does not help at all to know that there is a 99.78% probability of paternity as compared to an untested, unrelated man of the North American Black population. Without further guidance as to the method by which this number was derived and the meaning of the phrase `untested and unrelated man of the North American Black population', the Court is unable to attach great weight to this report. Nor is the Court afforded an explanation of the meaning of a Paternity Index of 460:1 or the significance of the fact that the `prior probability = 0.5,' a statement presumably to be contrasted with the fact that the probability of paternity is now 99.78%.
The Court is not unaware that the scientific community has developed very powerful instruments of discovery which depend on satistical differences. The subject matter which underlies these tests and explains them, inferential statistics, is vast and complex. The Court needs guidance in interpreting conclusions such as the ones quoted above, as indicated by the language of La.R.S. 9:397.3 ..."
The determination of whether there has been sufficient proof of descent from an alleged parent is a question of fact. State in Interest of Braden v. Nash, 550 So.2d 866 (La.App. 2 Cir.1989). Plaintiff's burden of proof in a paternity action is by a preponderance of the evidence. Guillory *1301 v. Fuselier, 549 So.2d 920 (La.App. 3 Cir. 1989).
The trial judge recognized Ms. Joseph's claim, but believed defendant's testimony, as corroborated by Mr. Glaude. It has been repeatedly held that testimony, such as Mr. Glaude's, when based on reasonable credibility, is corroborative. State v. Bolden, 519 So.2d 362 (La.App. 2 Cir.1988); State in Interest of Braden, supra.
High paternity indices have been upheld as reliable when the tests were complete and correct, and the evidence of intercourse sufficient. State in Interest of Braden, supra. In every case where paternity was proven, in addition to a high paternity index, there was other corroborating evidence of paternity introduced at trial.
In State, through DHHR v. Normand, 534 So.2d 158 (La.App. 3 Cir.1988), two witnesses testified that defendant acknowledged the child to be his and stated that he was hoping for a girl. In State v. Bolden, supra, the defendant admitted sexual relations on or near the time of conception and two witnesses testified that the defendant admitted to each of them, that he was the father of the child. In State in Interest of Kimball v. Rollins, 528 So.2d 686 (La.App. 2 Cir.1988), there was evidence of defendant's informal acknowledgment of the child, including two photos of the defendant and the infant and a postcard mailed by the defendant to the mother which stated as a postscript, "take care of my boy." In Worley v. Thirdkill, 506 So.2d 1288 (La.app. 2 Cir.1987), both parties admitted to having sex on or near the date of conception and this was verified by a neighbor who frequently observed defendant's vehicle parked at the mother's residence and by a friend who observed the mother and defendant in bed together near the time conception occurred.
In Turner v. Rochelle, 490 So.2d 633 (La.App. 2 Cir. 1986), one witness testified that defendant was the only man the mother dated and that he was constantly over at her house until their breakup, which was well after the approximate time of conception. The witness further stated that when defendant viewed the child, two months after his birth, defendant referred to the baby as his "pretty son" and two other witnesses verified this. In Perkins v. Verga, 554 So.2d 787 (La.App. 5 Cir.1989), writ den., 559 So.2d 139 (La.1990), only one corroborating witness testified and said that the mother had showed her a picture and identified it to be of the child's father but that the picture did not appear to be one of the defendant. The trial judge in that case did not find that paternity had been proven. In affirming the trial judge, the Appellate Court held that a defendant in a paternity action, despite adverse blood test results forming prima facie proof of parentage, can overcome this presumption by presenting convincing contrary evidence.
Scientific testing alone is not sufficient to prove paternity but it is persuasive and objective proof that can help establish paternity. Guillory, supra. In the instant case, Ms. Joseph was unsure of most dates and times, and the defendant positively testified that his sexual relationship with Ms. Joseph ended long before the estimated time of conception. His testimony concerning the termination of the relationship is corroborated by that of Mr. Glaude.
Based on a totality of the evidence and in light of the trial judge's great discretion in evaluating the credibility of witnesses and determining factual issues, we cannot say the trial judge was clearly wrong or manifestly in error in his finding that plaintiff failed to meet its burden of proof. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978); Williams v. Olden, 561 So.2d 871 (La.App. 2 Cir.1990); and Williams v. Williams, 527 So.2d 1068 (La.App. 1 Cir. 1988), writ den., 532 So.2d 153 (La.1989).
For these reasons, we do not find the trial judge's findings of fact are clearly wrong or manifestly in error.
Plaintiff further contends that the trial court's rejection of its demands was founded upon the following erroneous conclusions of law that:
(1) La.R.S. 9:397.3 indicates the legislature contemplated a contest of experts; and
*1302 (2) The statutory scheme contemplates something more than the conclusion set forth in a report of a blood test introduced into evidence without expert testimony or an explanatory statement sufficient to aid the Court in weighing the conclusions in the report.
These contentions will be discussed together.
The Uniform Act on Blood Tests to Determine Paternity, La.R.S. 9:397.3, provides:
"A. A written report of the results of the initial testing, certified by a sworn affidavit by the expert who supervised the tests, shall be filed in the suit record. A notice that the report has been filed shall be mailed by certified mail to all parties by the clerk of court or shall be served in accordance with Code of Civil Procedure Article 1314. A party may challenge the testing procedure within thirty days of the date of receipt or service of the notice.
B. If the court finds there has been a procedural error in the administration of the tests, the court shall order an additional test made by the same laboratory or expert. If there is no timely challenge to the testing procedure or if the court finds there has been no procedural error in the testing procedure, the certified report shall be admitted in evidence at trial as prima facie proof of its contents, provided that the party against whom the report is sought to be used may summon and examine those making the original of the report as witnesses under cross-examination.
C. Any additional testing ordered by the court pursuant to this Part shall be proved by the testimony of the expert.
D. If the court finds that the conclusions of all the experts as disclosed by the reports, based upon the tests, are that the alleged father is not the father of the child, the question of paternity shall be resolved accordingly. If the experts disagree in their findings or conclusions, the question shall be submitted upon all the evidence."
A 1988 amendment of Subsection D, deleted the former final sentence which had read, "The tests and the testimony of the mother alone shall not be sufficient grounds for determining that the man is the father of the child." This Act was adopted by the Legislature to provide a carefully regulated evidentiary procedure for proving paternity. McGowan v. Poche, 393 So.2d 278 (La.App. 1 Cir. 1980). The statute allows for the admission of the blood test results as prima facie proof of their content. La.R.S. 9:397.3B. It does not state that blood test results are prima facie proof of paternity. As has already been discussed, blood test results are not conclusive proof but they are only persuasive evidence.
Plaintiff argues that when the Legislature deleted the last sentence of Section D that stated, "The tests and the testimony of the mother alone shall not be sufficient grounds for determining that the man is the father of the child," it intended for only the mother's testimony and test results to be sufficient for proof of paternity. We do not agree. Any plaintiff wishing to prove paternity must still do so by a preponderance of the evidence. La.C.C. Art. 209; Williams v. Williams, supra. A blood test and the mother's testimony are only methods of proof for proving the fact at issue. They, in and of themselves, are not conclusive proof.
In the instant case, the trial court read the report of the blood test results without the aid of an expert's testimony and noted that defendant was included in the general population of those who could be the father. The trial court was also aware that blood tests cannot prove paternity beyond any doubt. The trial court considered the blood test results and the testimony of defendant and Mr. Glaude that, by the estimated time of conception, Ms. Joseph and defendant had already ended their relationship.
While the test results indicate that defendant is included in the male population who could be the father, if he and Ms. Joseph did not continue to have a sexual relationship during the estimated conception period, *1303 then clearly some other man included in the possible percentile could be the father. See, Perkins v. Verga, supra. The trial court found that plaintiff had failed to meet its burden of proving defendant and Ms. Joseph were having a sexual relationship at the time of conception of the child. We do not find that the trial court was manifestly in error or clearly wrong in finding that the testimony of Ms. Joseph, which the trial court did not find very credible, and the report of the results of the blood tests, which the trial court found could be subject to varying interpretations without expert testimony to explain it, were not sufficient to prove defendant's paternity of the child.
For these reasons, this assignment of error lacks merit.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are taxed to plaintiff-appellant.
AFFIRMED.
*1304