ELORA C. FINK, Judge Pro Tern.
This is an appeal by Lawrence Jackson from a judgment of paternity. Plaintiffs in the action are the State of Louisiana and Linda Cason. We affirm.
Cason and Jackson met and started going together in 1977. They engaged in frequent sexual intercourse during the term of the relationship, which ended in 1986.
In November 1979, Cason gave birth to a daughter she named Keina Cason. Sometime in late 1980 or early 1981 Linda Cason and Jackson began living together.
On August 9, 1988, Cason and the State of Louisiana instituted a paternity suit against Jackson to prove he is the natural father of Keina. Cason, Keina and Jackson subsequently submitted to blood tests *1241 at a local Roche Biomedical Laboratory. In 1990 Jackson sought another blood test for paternal evaluation from a facility at Southern Baptist Hospital.
Trial of the matter was held on March 12, July 16, and August 2, 1990. On September 12, 1990, a judgment was rendered in plaintiffs’ favor and defendant appealed.
The issue on appeal is whether the trial judge was manifestly erroneous in finding Jackson to be the natural father of the child. Defendant contends the evidence does not clearly and convincingly demonstrate his continuous, habitual and unequivocal acknowledgement of Keina Cason as his daughter. He also contends he has presented contrary evidence to rebut the test results.
The evidence herein shows the blood tests used to indicate probable paternity cannot establish paternity absolutely, but can exclude paternity with certainty. However, the two experts who testified, Dr. Clifton Ray Harris, a Ph.D. in biology with an emphasis in genetics, and Dr. L. Ray Bryant, a medical doctor specializing in clinical pathology and transfusion medicine of blood banking, stated the test is valuable in establishing probabilities from the genetic markers found in the blood samples.
Dr. Harris, an associate director of the paternity evaluation department for Roche Biomedical Laboratories, Inc., was initially called by both sides. He stated the Roche test results indicated a 98.16% probability that Jackson is the biological father. He further stated the figures made it “extremely likely” Jackson is the father. However, Harris pointed out the probability percentage would fluctuate up or down depending on the social evidence.
Dr. Bryant, called as an expert by the defense, stated his test indicated a probability of 97.77%. He interpreted the percentage to show Jackson was “very likely” the biological father. He agreed the social facts would affect the probability percentage.
Linda Cason testified that the relationship began in 1977 and that the couple had frequent sexual intercourse at her home where she lived with her mother, two sisters, brother and child from a previous relationship. She stated she and Jackson also went to the Red Carpet Motel once a week for privacy.
Cason testified Jackson’s name was not put on the birth certificate because he was married at the time to another woman. She contended he visited her at the hospital after the child was born, however, and they continued the relationship after the birth.
Cason stated that Jackson moved in with her in 1980 or 1981 when she moved into a house across from his mother’s house. She was unable to produce much documentation in the form of receipts, etc. to prove the parties lived together. However, she stated he gave her cash and she paid the bills. She introduced one Sears receipt for sock anklets allegedly purchased by him for the child and an application in 1984 for life insurance signed by both on which they stated they had a “common law marriage”.
Keina Cason, who was ten years old at the time of trial, also testified. She asserted Jackson told her he was her father on several occasions. Keina stated Jackson purchased toys for her over the time he and her mother lived together. She also said he gave her money to buy clothes.
Keina informed the court that Jackson took her to a funeral in Mississippi where she was introduced by him to her brother and sister. She stated he explained he was their father, although their mother was different. Keina also said she knew Jackson’s mother and that she spent time at her house with another child when she lived across the street during the time he and her mother were together.
George Cason, Linda’s father, testified Jackson was a family friend for many years. He confirmed that Jackson and Linda lived together for a long time. He also testified Jackson and his daughter were going together when she became pregnant with Keina.
Wilomena Hill Jenkins was the agent who sold the life insurance policy to Cason and Jackson which was introduced at trial. She testified both Cason and Jackson were there when the application was completed *1242 and she witnessed Jackson signing the form.
Jenkins is Cason’s sister-in-law. She testified she knew the couple for years. She stated she visited the couple at their home on several occasions during the time they lived together.
Defendant produced the testimony of his mother, Phyllis Jackson, and his sister, Sharon Howard. Both witnesses claimed neither Jackson nor Linda told them Keina was Jackson’s daughter. They also contended Jackson did not live with Cason at the time and stated he had his own house near his mother’s home. Howard, in fact, claimed she never met Keina although she lived in the same area for a while. She also contended she never went into her brother’s house or in the house in which Cason lived at any time, yet she insisted she knew they did not live together.
LSA-C.C. art. 209 provides for an action to prove filiation where the child is neither entitled to legitimate filiation nor has been formally acknowledged. Proof of filiation under this article is by a preponderance of the evidence. The comments state such proof “may include but is not limited to: ‘Informal acknowledgment; scientific test results; acknowledgement in a testament; and proof that the alleged parents lived in a state of concubinage at the time of conception.’ ” (Emphasis added).
The official comments to art. 209 further state that contrary evidence to disprove the allegation includes, but is not limited to the types of proof outlined in LSA-C.C. art. 187 which is the article on disavowal of paternity. That article lists as examples of evidence: negative blood tests, unmatched DNA prints, sterility, physical impossibility because of location at the time of conception, and any other relevant scientific or medical evidence.
Scientific testing alone is insufficient to prove paternity; however, it is persuasive and can be used to help establish proof by a preponderance of the evidence. LeBlanc v. LeBlanc, 497 So.2d 1361 (La.1986). Despite adverse blood tests resulting in a prima facie case of paternity, a defendant may overcome the presumption by presenting contrary evidence. Perkins v. Vega, 554 So.2d 787 (La.App. 5 Cir.1989), writ denied, 559 So.2d 139 (La.1990).
In this case, the trial judge found the evidence overwhelming in favor of the plaintiffs. She stated the couple engaged in frequent sexual intercourse before and after Keina’s conception and that Jackson remained in the relationship for many years after the child’s birth. The judge noted he signed a document in 1984 as the “common law spouse” of Cason. She pointed out that there was no evidence Linda Cason was involved sexually with any other person from 1978 to 1986. The trial judge found that Jackson told Keina he was her father and that he also purchased toys for the child. The judge referred to the blood tests, which fell in the range of 97.77% to 98.16% probability of paternity and to the experts testimony that it was “extremely” or “very” likely Jackson was the father based on this index. She then concluded the plaintiffs met their burden of proof and that defendant failed to rebut the presumption raised by the scientific evidence. After our review, we find the trial judge did not err in her factual determinations and conclusion and, consequently, was correct in ruling for the plaintiffs.
Accordingly, the judgment of the trial court is hereby affirmed.
AFFIRMED